Setzer *v*. State.

Opinion delivered November 17, 1913.

1. CRIMINAL LAW—PROCEDURE—CONSOLIDATION OF CASES.—While it is not good practice, it is not error to try two indictments against one defendant, together, if done with the defendant's consent. (Page 227.)

2. CRIMINAL LAW—CONVICTION—PROOF OF SIMILAR CRIMES.—A conviction may not be had for one crime by proof of the commission of similar crimes, and evidence of such crimes is admissible only for the purpose of showing the intent or design of defendant in committing the crime with which he is charged. (Page 228.)

3. TRIAL—ARGUMENT OF COUNSEL.—The prejudice resulting from improper argument of the prosecuting attorney may be removed by a withdrawal of the statement, and an admonition by the court. (Page 231.)

Appeal from Marion Circuit Court; *George W. Reed*, Judge; affirmed.

*Sam Williams*, for appellant.

No rule of criminal procedure is better settled than that evidence of one crime can not be introduced to prove a man guilty of another. The testimony not only fails to show that the crimes testified to by the witnesses Crunkleton and Morris were connected with the crime

charged in this case, or formed a part of one transaction, but it affirmatively shows that they were separate and distinct transactions. 37 Ark. 261; 39 Ark. 278; 54 Ark. 621.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. "Evidence of similar larcenies is admissible for the purpose of showing particular intention, knowledge, good or bad faith, when these are in issue and essential to constitute the crime." 72 Ark. 586; 75 Ark. 427; 84 Ark. 119-121; 92 Ark. 481-483. This rule is as well established as the rule invoked by appellant.

2. The prosecuting attorney's argument was not objectionable. 79 Ark. 29-31.

SMITH, J. On the 27th day of January, 1911, the grand jury of Marion County, Arkansas, returned two indictments against appellant and one Green Tigue. The first indictment charged them with the crime of grand larceny alleged to have been committed by stealing three hogs, the property of J. F. Dillard. The second indictment charged them with the crime of altering the marks of three hogs, the property of J. F. Dillard, with the felonious intent to steal them. At the time of appellant's trial, Tigue was not in custody and on the calling of the case, it being made to appear to the court that both these indictments related to the same transaction, it was agreed that by consent they should be consolidated and be treated as one indictment, containing two counts, and tried as such. No objection was made, or is now made, to the action of the court in ordering the cases consolidated and treated as separate counts in a single indictment. While this is not a practice to be approved, it is not error when done with defendant's consent. Bishop's New Criminal Procedure, § 1042; *Halley* v. *State,* 108 Ark. 224, 158 S. W. 121; *McClelland* v. *State,* 32 Ark. 609; *McDonald* v. *State,* 104 Ark. 317; *Price* v. *State,* 71 Ark. 180; *Lucas* v. *State,* 3 L. R. A. (N. S.) 412.

A number of exceptions were saved during the progress of the trial to various rulings of the court which

were assigned as error in the motion for a new trial, and have been discussed in appellant's brief. But the only points which appear to be of sufficient importance to require discussion, and the ones upon which appellant chiefly relies for a reversal, are the alleged errors of the court in the admission of certain testimony given by a witness named Oscar Crunkleton, and another named Henry Morris, and the alleged prejudicial remarks of the prosecuting attorney in the argument of the case before the jury. The evidence of Crunkleton and Morris was objected to because, as appellant says, its effect was to show that appellant was guilty of a larceny other than the one alleged to have been committed by stealing hogs, the property of J. F. Dillard. The evidence was substantially as follows: Crunkleton testified that some time in the winter of 1911—and he did not remember just when this was except that it was on a Sunday afternoon about dark—as he was traveling on the road near appellant's house, he stopped to light his lantern, and as he did so, he heard one man say to another: "This is a pretty good one and a better one than we got the day before." He did not go up to the parties he heard talking, but he observed them to see who they were and where they would go, and he finally saw them carry a large hog on a pole between them, and he thought, from the size and shape of one of the men, that he was the appellant; and the men carried the hog toward appellant's house.

The evidence of the witness Morris was to the effect that appellant and Tigue and one Sam Wilson had gotten up some of witness's hogs, and he went to the place where he had been told the hogs had been tied, and he followed the wagon tracks from this place to the road which led to appellant's house. He testified that he spoke to Wilson, Tigue and appellant about his hogs, and they agreed to replace them. Appellant denies that he made any such promise, and says the witness should not be allowed to give any evidence against him of statements made by Wilson and Tigue in his absence about

replacing the hogs. But witness testified that appellant himself made this promise in the presence of the others.

Appellant cites many cases to the effect that a conviction may not be had for one crime by proof of commission of similar crimes. And this rule is well-settled, an exception being where an act may either be lawful or criminal, depending upon the intent with which it was committed. In such cases proof of similar acts is admitted for the purpose only of showing intent and design. Upon the examination of the witness, Morris, the following colloquy took place:

*Counsel for Defense:* As I understand the question, it is introducing the evidence of some other crime for the purpose of showing motive or intent of the one on trial?

*Counsel for the State:* This is connected with intent and shows a similar act for a similar crime.

*The Court:* For that purpose it will be admitted. For the purpose of showing intent, it is not proper to show whether or not he was getting witness' hogs.

Ordinarily such evidence is not admissible, and the jury should never be permitted to hear evidence of the commission of one crime as a circumstance from which to infer guilt of another; but we think the evidence competent under the facts in this case. The theory of the State was that appellant and Tigue were in the hog-stealing business, and had stolen three hogs from J. F. Dillard, and had stolen a number of other hogs from other owners. The hogs in question were found at appellant's house together with several other hogs, killed and dressed, and he could not deny having these hogs in his possession, and could only excuse himself by claiming the right to kill them. Appellant claimed that Sam Wilson had employed him to get up his hogs and butcher them for him, and had promised him one-third of all the hogs so gotten up. The proof shows that at the time of the trial Wilson had been dead for some time, and that Tigue's whereabouts were then unknown, and that appellant had left the country and remained away for some months after the hogs had been found at his home. Dil-

lard testified that he came to defendant's house one Saturday afternoon and saw five or six hogs which had been lately killed, and upon examining them he recognized three of the hogs as his property. Wilson, appellant and Tigue were all present at the time, and Dillard interrogated them about the hogs and the change of mark, and Wilson said he had told appellant not to change the mark, and also stated that the hogs were not his, and neither appellant nor Tigue made any reply to this statement made in their presence. Dillard demanded that the hogs be brought to his house, and on the following Monday a half of one hog was brought to him, and on the next day two hogs were brought him, except their heads, which Tigue claimed they had eaten, together with half of the hog which had been brought Monday.

The hogs belonging to the witness Morris were taken by the three same men, and, according to the State's theory, in pursuit of a common purpose and conspiracy, and the State was entitled to introduce this evidence in determining whether appellant had been employed by Wilson for any honest purpose or not. And the evidence of the witness Crunkleton was admissible for the same reason. *Howard v. State,* 72 Ark. 586; *Johnson v. State,* 75 Ark. 427; *Woodward v. State,* 84 Ark. 119; *Ross v. State,* 92 Ark. 481.

The argument of the prosecuting attorney complained of was as follows:

"Gentlemen of the Jury: If they (meaning the defendant and the party jointly indicted with him) were not in the hog stealing business, why did they have Henry Morris's hogs tied up over there in the hollow? Gentlemen of the jury, the defendant claims that he was employed by Sam Wilson, and that Sam Wilson claimed these hogs, but I say to you that Sam Wilson is dead. That if he was here he would tell a different tale."

*By Attorney for Defendant:* Your Honor, we object to that statement.

*By the Court:* Mr. Fee, you had better not argue what Sam Wilson would swear.

*By Mr. Fee:* All right, I withdraw the statement.

*Attorney for Defendant:* Your Honor, we want you to instruct the jury that they are not to consider this statement, nor what Sam Wilson would swear.

*By the Court:* I think the jury understands that.

And also the following closing argument by the prosecuting attorney: "Gentlemen of the jury, in determining the intent in this case you have a right to consider the evidence of Oscar Crunkleton and Henry Morris, which shows that these parties (meaning defendant and the parties jointly indicted with him) were engaged in the hog stealing business. The defendant denies that he was the party testified to by Oscar Crunkleton. If it was not him, who was it? You would expect him to deny it, wouldn't you? He denies that he got Henry Morris' hogs. Henry's hogs were gone, and if they (meaning the defendant and the parties jointly indicted with him) did not get them, where did they go? Who did get them? Gentlemen, you have a right to consider these circumstances as throwing light on the intention of the defendant in this case. They are all straws that show which way the wind blows."

We have just shown that the evidence of Morris was proper and the prosecuting attorney was therefore within the law in his comments upon it, and the statement in regard to what Wilson would have testified had he been present was withdrawn by the attorney and the jury admonished not to consider it, and any possible prejudice was thereby removed.

The concluding argument of the prosecuting attorney was a proper comment upon the evidence of Crunkleton and Morris.

Finding no prejudicial error, the judgment of the court below is affirmed.