476

5067 366 S.W. 2d 891

Opinion delivered April 22, 1963.

*William T. Stahl,* for appellant.

*Bruce Bennett,* Atty. General, by *Jerry L. Patterson,* Asst. Atty. General, for appellee.

Paul Ward, Associate Justice. Appellant, James Daniel Norman, was found guilty by a jury of the crime of robbery, and the court sentenced him to six years in the penitentiary.

To better understand the issues raised on appeal by appellant, we set out below a summary of the facts and circumstances attending the alleged offense, his apprehension, and his trial.

The testimony shows: that appellant (or someone alleged to be appellant) engaged a taxi (driven by A. J. Shepperson) in Memphis at about two a.m. on December 3, 1957, for the purpose of driving to Marion, Arkansas; that they drove two miles past Marion when appellant drew a pistol on Shepperson and forced Shepperson to give him $15; that appellant was taken into custody by R. E. Craig (a deputy sheriff) on January 18, 1962, in Hawkinsville, Georgia, where appellant was an inmate of a county prison farm, and; that he was promptly confined in the

Crittenden County jail where he remained until tried on September 18, 1962. The information was filed January 29, 1962.

Appellant's contention for a reversal is based on three separate grounds, to-wit: *One,* introduction of certain evidence; *Two,* disqualification of the trial judge; and, *Three,* insufficiency of the evidence.

*One.* The state, in order to explain the delay (from 1957 to 1962) in trying appellant, and in order to avoid the provisions of Ark. Stats. § 43-1602 and to invoke the provisions of § 43-1604, offered to prove by R. E. Craig that appellant made certain statements to him about the length of time he had served in the Georgia prison. Appellant objected to the testimony, but after the trial court admitted the testimony and explained its purpose, no exception was saved to the ruling of the court. In this situation we are not at liberty to examine the merits of the objection, as was fully explained in *Criner* v. *State,* 236 Ark. 220, 365 S. W. 2d 252.

*Two.* Before the trial began appellant filed a motion, asking the trial judge to disqualify himself and to transfer the cause to another judge. The motion was denied, and appellant saved his exceptions. We have no hesitancy in approving the action of the trial court. However, in explanation of the action of the trial judge and also the attorney who made the motion, we set out below, the attending facts and circumstances.

Previous to the trial the court had appointed an attorney to represent appellant, but, for reasons set out in the record, the attorney requested to be and was relieved of the appointment. Thereupon, the present attorney was appointed to handle the defense. The first attorney's request was in a letter to the trial judge. Appellant objected to certain portions of the letter which, he thought, might tend to prejudice the trial judge against him. In overruling the motion the trial court commented frankly on the situation, making a full disclosure of his attitude. Among other things the court, in referring to the letter, said: It "did not nor does it at this

time cause the court, as it now exists, to have any bias or prejudice against the defendant.''

Appellant, in his brief, commendably admits the trial judge was not disqualified (under the provisions of Article 7, § 20 of the Constitution or Ark. Stats. § 22-113) because of any interest in the case. Appellant suggests that the trial judge might have disqualified himself in keeping with certain language quoted (from 15 R.C.L. 530, § 18) in the case of *Hudspeth* v. *State*, 188 Ark. 323, 67 S. W. 2d 191. However, neither the cited opinion nor the quoted language sustains appellant. The latter, in speaking of bias or prejudice as a disqualification of a judge, says ''. . . this must be shown as a matter of fact, and not as a matter of opinion of the defendant or any other person.'' In the case under consideration not only are there no facts showing bias or prejudice, but no one even expresses an opinion that either existed. As aptly stated by the trial court at the time the motion was overruled, it could not ''in carrying out the duty required of it, disqualify for the reasons alleged.''

*Three.* The question raised as to the sufficiency of the evidence to sustain the conviction relates only to the identity of the person who robbed Shepperson. Shepperson, on direct examination, was ''quite sure'' the appellant was the man who robbed him — he saw appellant in the light near the Peabody Hotel in Memphis. On cross-examination the witness appeared to be somewhat less certain, as shown by the following:

''Q. Remember, you are under oath?

''A. That is right.

''Q. Sworn to tell the truth?

''A. That is right.

''Q. Can you, beyond a doubt, say that this is the man, the passenger in your cab that night?

''A. This gentleman looks like the gentleman, only had a shorter haircut.

''Q. Can't say, positively?

"A. Five years makes a lot of difference, but to me the face of the gentleman looks the same to me.

"Q. Is it true, you cannot say, positively, this is the man?

"A. I can't say, under oath, no, I won't say it."

Following the above the state introduced a picture of appellant made when he was placed in the Crittenden County jail. On recall of Shepperson by the state this picture was shown to him and he was asked if that was the man who robbed him.

"A. Yes, sir. This is the gentleman.

"Q. Can you tell the jury of whom that is a picture?

"A. That is a picture of the gentleman sitting over here.

"Q. Can you say —

"A. That is the man right there, he is much heavier there and the crew haircut.

"Q. Hair cut similar or different from the man?

"A. Hair cut just about that way, short haircut.

"Q. Does, Mr. Shepperson, does seeing that picture make you any more or less certain of your identification of the defendant?"

\* \* \*

"A. I believe, I am more certain.

"Q. What do you tell the jury, Mr. Shepperson, now, about whether this is the man who committed the crime?

"A. Without a doubt, I believe, this is the man."

In view of the above testimony we are unwilling to say the jury verdict was not supported by substantial evidence.

Affirmed.

HOLT, J., disqualified.