FREEMAN *v.* STATE.

5114                                     385 S. W. 2d 156

Opinion delivered December 14, 1964.

[Rehearing denied January 18, 1965.]

*Harold L. Hall,* for appellant.

*Bruce Bennett,* Attorney General, By: *Beryl Anthony, Jr.,* Assitant Attorney General, for appellee.

PAUL WARD, Associate Justice. During a fight at the Hollywood Club in North Little Rock on the night of September 16, 1962 Ted B. Freeman (appellant herein) allegedly shot and killed Billy McKim and shot and wounded Buck Berryman. Appellant was charged with the crime of murder in the second degree, was convicted as charged, and was sentenced to 10 years in the state penitentiary. Appellant now prosecutes this appeal, alleging several specified grounds for a reversal.

A study of the testimony fails to reveal clearly the exact details of just what happened on the night in question. Appellant, who ran the Am Vets Club in North Little Rock at night time, closed that club at about 2:30 a.m. and went to the Hollywood Club to return some brandy which he had borrowed. With him at the time was his assistant, Mildred Gill, who was carrying a large purse which contained the club money and also a pistol which appellant had handed to her as they left. Appellant's version of what happened was substantially as follows: I entered the Hollywood Club and sat down at a table with some other people; Buck Berryman came over to our table and knocked me to the floor and started kicking me; then some other people also started kicking me and someone hit me with a piece of iron pipe; then Mildred handed me the pistol, and when Buck jumped on me the gun went off; when some one hit me on the hand I lost my gun—I fired only one time; I don't know whom the shot hit; they took me to the hospital where I stayed fifteen or sixteen days—there were eleven lacerations on my head. We intended to have a drink at the Hollywood Club and then go home; I fired the shot because I was in fear of my life. Mildred Gill corroborated the testimony of appellant. She also testified she saw Billy McKim (the deceased) kick appellant, but she didn't know who shot McKim.

Other witnesses gave a different version of the part appellant played in the melee. Russell Patterson (the operator of the Hollywood Club) testified in substance: I broke up the fight between appellant and Berryman, and told P. D. Nash to take Berryman out; while they were walking toward the door I was talking to McKim; then I heard a shot and thought Berryman was shot in the stomach; then someone fired two more shots— it looked like appellant fired the third shot right at McKim, but Berryman was also advancing toward appellant at the time; I then hit appellant on the head three or four times trying to knock the gun out of his hand; someone hollered and appellant jumped out of the window; I don't know what happened to the gun after I knocked it out of appellant's hand. Buck Berryman testified in substance: I went over to the table where appellant was sitting in an attempt to settle our old troubles; when it appeared appellant was going going for something in his pocket I pushed him out of his chair; then P. D. Nash and I started to leave when I felt the shot hit me in the back; I turned and saw another shot—I saw the flame from the gun and I made a run for him (presumably meaning appellant) and we both went down. P. D. Nash corroborated Berryman's statement, but he made it clear that he saw appellant with the gun and that the gun "went bang, bang, bang"—three or four times, and that at the same time he heard McKim say he had been shot. He also testified that after the shooting he saw Russell Patterson trying to take the gun away from appellant.

In addition there was testimony showing that ill feelings had existed for some time between appellant and Buck Berryman, and that appellant had previously made threats to harm or kill Berryman.

In view of the above we are unwilling to say, as a matter of law, that there was no substantial evidence to support the jury's verdict. On appeal we must view the evidence in the light most favorable to the state. *Allgood* v. *State,* 206 Ark. 699, 177 S.W. 2d 928. There are, however, other points relied on by appellant which we now examine.

*One.* Points 1, 2, 3, and 4 raised by appellant are similar and may be discussed together. The court quite properly, we think, allowed the state to show Berryman and appellant had a fight sometime during the past six months. The court allowed Berryman to testify relative to threats by appellant to kill him. The court allowed Nash to testify appellant said he was going to kill Berryman. The court also allowed Laura Wilkins Neal to testify that appellant showed her a gun and said he was going to shoot Berryman if he "ever got into it with him again". The trouble between appellant and Berryman and the threats made by appellant were all admissible to show who was the agressor and also the motive or ill will on the part of appellant. *Crowe* v. *State,* 178 Ark. 1121, 13 S. W. 2d 606 and *McGraw* v. *State,* 184 Ark. 342, 42 S.W. 2d 373. We see no merit in appellant's contention that the incidents mentioned were too remote in time to be admissible in evidence. The fight occurred sometime within six months before the shooting. The threats occurred at approximately the same time, and they also appeared to be of a continuing nature.

*Two.* There was no reversible error in allowing three empty shells to be introduced in evidence. They were found in appellant's gun soon after the shooting, and there was no evidence to show the gun was tampered with in the meantime. Appellant said he fired only one time and the empty shells tended to confirm other testimony by the state that more than one shot was fired.

*Three.* There is no merit in the contention the court committed reversible error in punishing Buddy Cook for contempt in the presence of the jury. Cook, who had been subpoenaed as a witness, failed to appear as ordered. It does not appear from the record that the jury even knew by which side he had been subpoenaed, and certainly it does not appear that the matter was in any way prejudicial to appellant.

*Four.* Appellant objects to two statements made by the deputy prosecuting attorney in his address to the jury. We have examined the record carefully and are

convinced that the statements complained of were mere expressions of his opinion. The matter was brought to the attention of the court and the jury was admonished to be guided only by the evidence. In such matters much is and must be left to the sound discretion of the trial judge: *Reynolds* v. *State,* 220 Ark. 188, 246 S.W. 2d 724.

*Five.* Finally, appellant argues that the trial court erred in refusing to grant a new trial on newly discovered evidence. It is stated that Ed Gatewood was intimated by the state's attorney and therefore kept from making "any statement other than what was in the statement already made by him". No error is shown because no conclusive proof is offered that the witness was intimidated, and also there is no showing what testimony he would have given if he had testified. It is also stated that appellant had discovered another witness, Glynn Deese, who would testify that he saw the shooting and five or six men were beating the defendant. We see no reversible error because no due diligence is shown and because this testimony was merely cumulative, and tended only to impeach other testimony. Such testimony is not grounds for a new trial. *Jones* v. *State,* 196 Ark. 176, 116 S.W. 2d 610 and *Therman* v. *State,* 205 Ark. 376, 168 S.W.2d 833.

Affirmed.