WILLIE JOE CHILDS ET AL *v.* STATE OF ARKANSAS

5253                                          418 S. W. 2d 793

Opinion delivered September 25, 1967

*Willis V. Lewis,* for appellants.

Joe Purcell, Attorney General; *Don Langston,* Asst.
Atty. Gen., for appellee.

PAUL WARD, Justice. Appellants, Willie Joe Childs, Frankie Matthews, and Tommy Matthews, charged with stealing $500 from Kroger Stores, were convicted of grand larceny on December 5, 1966 and sentenced to serve nine years in the penitentiary.

There is no contention by appellants here that they did not commit the crime but they seek a reversal based solely on the grounds that the trial court committed three separate errors during the process of the trial.

We have carefully examined each of the alleged errors and, as explained hereafter, find no merit in any of them.

*One.* It is first urged that the court erred in admitting in evidence the confession made by appellants "without the benefit of counsel".

The undisputed testimony of the State Police Investigators (to whom the admissions of guilt were made by Tommy and Frankie Matthews) is that appellants were advised of their rights to have an attorney and to refuse to answer questions, and that if they did make any admission of guilt it might be used against them.

Appellants, for a reversal, rely on *Miranda* v. *Arizona,* 384 U. S. 436, citing the following statement:

"If an individual held for interrogation by a law enforcement officer indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking, there can be no questioning."

At no time did Tommy or Frankie Matthews in any way indicate they wanted to consult with an attorney.

With reference to Childs' confession the situation was different. Bill Mitchell (a criminal investigator) testified:

"I advised him that he didn't have to tell me anything unless he had an attorney present and that if he did tell me something it might be used against him. That if he didn't have funds for an attorney I would be glad to get him one."

After a conference in chambers between the court and the attorneys the witness further testified:

"Q. When you asked Willie Joe Childs whether or not he wanted an attorney, what was his reply?

"A. He said that he did, and he agreed to go ahead and talk to me.

"Q. He agreed to go ahead and talk to you?

"A. Yes, sir.

"Q. After you asked him if he wanted an attorney and you advised him of his other rights you have outlined?

"A. Yes, sir."

Following the above the witness testified to what Childs told him.

Again, no objection was made to the above testimony, and no exception was saved. Thus, if it be admitted for the purpose of this opinion that the court erred in allowing the confessions in evidence, such cannot be reviewed on appeal. *Criner* v. *State,* 236 Ark. 220, 365 S. W. 2d 252 and *Norman* v. *State,* 236 Ark. 476, 366 S. W. 2d 891.

Also, we point out our holding in the case of *Slaughter & Scott* v. *State,* 240 Ark. 471, 400 S. W. 2d 267, where we said:

"However, this is a personal right and the accused may knowingly and intelligently waive counsel either at a pretrial stage or at the trial."

*Two.* It is next contended that the court erred in allowing the state to introduce testimony showing appellants were "habitual and consistent criminals".

The question in issue arose in this manner. After the State Investigator had testified at some length regarding his connection with the investigation of the case, he made this statement: "I advised both subjects [Matthewses] of their rights, of their right to counsel, of their rights under the Fifth Amendment to the Constitution, and during the interview were advised that they had committed a till tap . . . ."

Thereupon appellants' attorney objected ". . .unless he can show they had an attorney present when they made the statement". The trial court overruled the objection and exceptions were saved by appellant.

A "till tap", as explained by the State Investigator, is where one person attracts the attention of the guardian of the "till" while his accomplice takes the money. In other words, that is one way of committing larceny to which these appellants confessed. We find no reversible error for the reason, as previously pointed out, the Matthewses at no time requested an attorney although they were fully advised of their right to have one.

*Three.* Finally, appellants contend the trial court committed reversible error in refusing to declare a mistrial because of a certain statement made by the State's Attorney in his closing argument to the jury. The essence of the statement was that the defendants do not live in the county, "they came in here. They stole somebody else's money, money that other people worked hard for. All you folks worked hard for your money. They didn't—They don't; They won't. Send them to the Arkansas Penitentiary for 21 years".

We find no reversible error. The jurors were evidently not too much impressed with the argument—they

gave the defendants nine years and not twenty one. No objection was made to the argument at the time, but only after the jury had announced its verdict. Therefore the trial court had no opportunity to admonish the jury, even had it been necessary to do so and we don't think it was. In the case of *Reynolds* v. *State,* 220 Ark. 188, 246 S. W. 2d 724, we find his statement:

> "Our rule is that we do 'not reverse for the mere expression of opinion of counsel in their argument before juries, unless so flagrant as to arouse passion and prejudice, made for that purpose, and necessarily having that effect' ".

To the same effect see *Freeman* v. *State,* 238 Ark. 804 (p. 808), 385 S. W. 2d 156.

Affirmed.

FOGLEMAN, J., concurs.

BYRD and BROWN, JJ., dissent.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result reached by the majority, but my reasons for doing so are different from theirs insofar as points two and three are concerned.

## POINT TWO

As I understand appellants' position, they question the admissibility of the testimony of officer Atkinson that one of appellants stated, in response to a question, that he hadn't worked for four or five years and that appellant had conducted "till taps", "pigeon drops" and "con games" throughout about three or four states, and that the statement was substantiated by this appellant's wife. The officer had previously stated that a "till tap" was a "con game" in which one of the "crew" by which it is conducted diverts the attention of the owner or manager of a place of business while an-

other goes into the cash box or drawer and removes the proceeds, the method allegedly used by appellants in this case. Appellants made an objection to the introduction of this testimony, were overruled and noted their exceptions. They urged in the motion for new trial and in their brief that the impropriety lay in permitting the state to attempt to show evidence of other offenses by appellants and to attack the character of appellants. I deem this testimony to be proper to show a series of similar offenses and a system of operation in the execution of a common plan, scheme, design, purpose and conspiracy of appellants. *Setzer* v. *State,* 110 Ark. 226, 161 S. W. 190; *Nichols* v. *State,* 153 Ark. 467, 240 S. W. 716; *Middleton* v. *State,* 162 Ark. 530, 258 S. W. 995; *Larman* v. *State,* 171 Ark. 1188, 286 S. W. 933; *Puckett* v. *State,* 194 Ark. 449, 108 S. W. 2d 468; *Rowland* v. *State,* 213 Ark. 780, 213 S. W. 2d 370; *Mouser* v. *State,* 216 Ark. 965, 228 S. W. 2d 472.

## POINT THREE

I agree that objection to the argument of the State's attorney should have been made in time for appropriate admonition to the jury. I do have serious question as to propriety of the argument made. I deem it unnecessary to approve it in deciding this case. Not only did appellants make no objection to the argument at the time it was made, but the question was first raised by motion for mistrial, after the jury had retired. Even this is not carried into the motion for new trial, so the question is not here for review. *McConnell* v. *State,* 227 Ark. 988, 302 S. W. 2d 805; *Randall* v. *State,* 239 Ark. 312, 389 S. W. 2d 229.

CONLEY BYRD, Justice, dissenting. I dissent only from the affirmance of the conviction of Willie Joe Childs, based on the holding in *Miranda* v. *Arizona,* 384 U. S. 436 (1966). At page 471 of the *Miranda* decision the court said:

"Accordingly we hold that an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer and to have the lawyer with him during interrogation under the system for protecting the privilege we delineate today. As with the warnings of the right to remain silent and that anything stated can be used in evidence against him, this warning is an absolute prerequisite to interrogation. No amount of circumstantial evidence that the person may have been aware of this right will suffice to stand in its stead. Only through such a warning is there ascertainable assurance that the accused was aware of this right.

"If an individual indicates that he wishes the assistance of counsel before any interrogation occurs, the authorities cannot rationally ignore or deny his request on the basis that the individual does not have or cannot afford a retained attorney."

At page 473 the court elucidated further as follows:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot ob-

tain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

Commencing on page 160 of the transcript, the record shows the following proceedings before the court:

"Q. Did you advise him of his civil rights?

A. Yes, sir, I did.

Q. How did you do that?

A. I advised Childs that he didn't have to tell me anything unless he had an attorney present—

Q. Did you advise him if he did tell you something that it might be used against him?

A. Yes, sir, I did.

Q. What else did you tell him?

A. I told him if he didn't have funds for an attorney I would be glad to get him one.

Q. And what was his reply to these assertions?

MR. HARTJE: Your Honor, I'm going to object to any testimony that he might give in view of the fact that Willie Joe Childs did not have an attorney present at the time of the statement.

MR. McCLINTON: That is not a proper and correct statement of the law, Your Honor.

THE COURT: The objection will be sustained. Go ahead.

MR. McCLINTON: I beg your pardon.

THE COURT: To that portion.

MR. McCLINTON: What portion?

THE COURT: That portion which an attorney was not present at the time. The witness will be advised.

Q. Will you go ahead, Mr. Mitchell, and tell us what further you found through your investigation?

MR. HARTJE: Now, I'm going to object. The Judge sustained my motion.

THE COURT: As to the objection that there is no attorney present at that time. Let's go in Chambers.

(The Court, attorneys, and court officials retired to Chambers, where the following things were said and done:)

THE COURT: The rule is when you arrest a man you advise him of his rights and ask him if he wants a lawyer, and if he says he does not—It is not clear here in this case whether he did or didn't.

MR. McCLINTON: Whether he did or did not say he wanted an attorney.

THE COURT: That's right.

(The Court, attorneys, and court officials returned to the courtroom, where the following things were said and done in open Court:)

Q. When you asked Willie Joe Childs whether or not he wanted an attorney, what was his reply?

A. He said that he did, and he agreed to go ahead and talk to me.

Q. He agreed to go ahead and talk to you?

A. Yes, sir.

Q. After you asked him if he wanted an attorney and you advised him of his other rights you have outlined?

A. Yes, sir.''

Thereafter, Trooper Mitchell was permitted to testify about his conversation with Willie Joe Childs. Appellant's objection to Trooper Mitchell's testimony was renewed as a motion for mistrial. (See pages 166 and 167 of the record.)

Trooper Mitchell did not comply with the *Miranda* case when he continued the discussion with Childs following Childs' indication that he did wish an attorney present. Nor can I find anything in the record to show a waiver within the limits set by the *Miranda* case. The matter of 'a waiver in such instances is fully discussed in the *Miranda* case at page 475 as follows:

''If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Escobedo* v. *Illinois,* 378 U. S. 478, 490, n. 14. This Court has always set high standards of proof for the waiver of constitutional rights, *Johnson* v. *Zerbst,* 304 U. S. 458 (1938), and we re-assert these standards as applied to in-custody interrogation. Since the State is responsible for establishing the isolated circumstances under which the interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders.

''An express statement that the individual is willing to make a statement and does not want an attorney followed closely by a statement could constitute a waiver. But a valid waiver will not be presumed

simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained. A statement we made in *Carnley* v. *Cochran,* 369 U. S. 506, 516 (1962), is applicable here:

'Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not a waiver.' "

Obviously, a person in custody can waive his right to have an attorney present during interrogation. But in view of the strong language quoted above from the *Miranda* case, I can not find such a waiver in this instance. Instead, it appears that the trooper, after going into the formalities of stating to Childs his constitutional rights, persisted in talking him out of his rights by continuing his interrogation after Childs had made known his desire to have counsel present during the interrogation.

It is true that counsel for appellant Childs did not save his exceptions to the rulings of the trial court, which under our antiquated system, 15 Ark. L. Rev. 69, is considered necessary for review in criminal cases before this court. However, as has been pointed out by the United States Supreme Court in *Henry* v. *Mississippi,* 379 U. S. 443 (1965), the procedural failure to save one's exceptions to a trial court's ruling on an objection does not necessarily waive one's federal rights. When we fail to recognize this adjudicated law in cases involving claims of federal rights here, we put this court in the position of having placed its stamp of approval on a conviction that the federal district courts will be required to review on a habeas corpus action.

Under the rulings of *Townsend* v. *Sain,* 372 U. S. 293 (1963), and *Henry* v. *Mississippi, supra,* courts in

habeas corpus actions are directed to disregard procedural defaults which do not affect the substantive rights of the parties. Our failure to recognize United States Supreme Court rulings in such matters puts the federal district judges of our state in the position of writing opinions and fact findings overruling, in effect, opinions by this court. Therefore, I maintain that this court, in ruling on issues which raise federal questions, should treat the issues in the same manner that the federal district court will be required to treat them, so that the federal district judges may rely on the considered opinions which we have given to the same records.

Of course, the illegally obtained evidence from appellant Childs in this case does not affect the convictions of appellants Frankie Russell Matthews and Tommy Matthews. *Wong Sun* v. *United States*, 371 U. S. 477 (1963).

For the reasons stated, I would reverse and remand for a new trial as to Willie Joe Childs.

BROWN, J., joins in dissent.