**Jackie Carver HILL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 41310.**

Court of Criminal Appeals of Texas.

June 12, 1968.

Rehearing Denied July 24, 1968.

James E. (Bud) Jones, Dallas, for appellant.

Henry Wade, Dist. Atty., Douglas Mulder, Malcolm Dade, Kerry P. FitzGerald and Camille Elliott, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

## OPINION

ONION, Judge.

The offense is felony theft; the punishment, enhanced under the provisions of Article 63, Vernon's Ann.P.C., life.

At the outset appellant contends the trial court erred in its refusal to grant his written "Motion for Continuance and for a

Mental Examination" filed the day the trial began.

The motion alleged that appellant was too poor to employ a doctor and requested that the court appoint one for the purpose of the mental examination. The basis of the motion was that a subsequent indictment had enhanced the probability of the appellant's insanity and that the appellant's "youth and the number of offenses he has committed raises the question of insanity."

■ The motion was not sworn to as required by Article 29.08, Vernon's Ann. C.C.P., and the court did not err in overruling it as a motion for continuance.

■ Though appellant alleged that he was unable to employ a doctor, it does not appear that at that time he was represented by a court appointed counsel or that the court had determined he was indigent.

No evidence appears to have been adduced in support of such motion, no request for a separate sanity hearing was made, and there is no showing that appellant had a history of mental disorder, had ever been adjudicated insane, nor was there any other evidence which indicates that this appellant should have alleged a defense of insanity. No claim was advanced that without the examination appellant would be unable to adequately prepare his defense or that he was mentally incompetent to stand trial.

In Hawks v. Peyton, 370 F.2d 123 (4th Cir., 1966), the Court made clear that "a simple suggestion of mental deficiency is not enough to require deferment of the trial" for an examination.

In Tyler v. Beto, 391 F.2d 993 (5th Cir., March 8, 1968), the Court said:

"It has been widely recognized that Pate v. Robinson [383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815] does not create an absolute right to a psychiatric examination, Greer v. Beto [5 Cir., 379 F.2d 923],

supra; Wilson v. Bailey, 4 Cir., 1967, 375 F.2d 663; Powell v. United States, 125 U.S.App.D.C. 364, 373 F.2d 225. The real issue to be resolved in cases such as this is whether the evidence presented to the trial judge is sufficient to raise a 'bonafide doubt' as to the defendant's competence to stand trial, Pate v. Robinson, supra. In other words, there must be some indication to the trial judge that competency to stand trial is a *substantial issue* before a referral of the defendant to a psychiatric examination is required.

"The minimum showing required for an examination must turn on the issue raised and facts presented."

We are not unmindful of the holdings of Bush v. McCollum, 231 F.Supp. 560 (N.D. Tex.1964) affirmed 344 F.2d 672 (5th–1965), Hintz v. Beto, 5th Cir., 1967, 379 F.2d 937, and Greer v. Beto, 5th Cir., 1967, 379 F.2d 923, to the effect that the refusal of the State Court to appoint a psychiatrist and to conduct a psychiatric examination pursuant to a motion by an indigent defendant therefor is a denial of due process and the effective assistance of counsel. We distinguish those cases as they were distinguished in Tyler v. Beto, supra. In each of those cases there was a showing that the indigent accused had been previously adjudged insane which adjudication had never been set aside, or had been committed as a mentally ill person, or had a long history of mental illness.

Under the circumstances presented, the trial court did not err in overruling the motion for a mental examination. Tyler v. Beto, supra. Ground of error #1 is overruled.

It is interesting to observe that since the time of appellant's trial Article 46.02, V.A. C.C.P., has been amended [1] to permit the trial court *at its discretion* to appoint disinterested qualified experts to make mental examinations of the defendant.

1. Acts 1967, 60th Leg., p. 1748, Ch. 659, Sec. 33, effective August 28, 1967. Codified as Article 46.02, Sec. 2(f) (1) (2) (3) (4) (5).

In his second ground of error appellant challenges the sufficiency of the evidence to support the verdict, contending that the written confession of the appellant was not sufficiently corroborated. We reject such contention.

Isham P. Nelson testified that he parked his 1964 blue Chrysler of the approximate value of $1500 in a parking lot in downtown Dallas about 2:30 p. m. on February 24, 1967. When he returned to the lot at 9:30 p. m. that night the car was missing and he reported the theft to the police immediately. He related that he did not give the appellant, whom he did not know, nor anyone else permission or consent to take his automobile.

The following morning a police officer discovered appellant in possession of the 1964 Chrysler at a service station in the City of Dallas where he was attempting to sell a television set. The automobile contained at the time a television stand and a record player. The record does not show that appellant made any explanation at the time of his arrest as to his possession of the Chrysler.

The State offered into evidence appellant's written confession that he alone had stolen the automobile from the parking lot in question.

While not testifying in his own behalf, appellant called one Walter Burleson who related that he, and not the appellant, had stolen the Nelson vehicle, and he had permitted the appellant to drive the car the next morning and had instructed the appellant to sell the items found in the car which he (Burleson) had stolen in several burglaries.[2]

■ Evidence showing the commission of the offense and appellant's unexplained possession of the recently stolen motor vehicle was sufficient to corroborate appellant's confession, and together they clearly

support the jury's verdict. Ground of error #2 is overruled.

■ In his third ground of error appellant contends that his confession was inadmissible as it was elicited from him while he was attemping to acquire counsel and such action violates his federal and state constitutional right to counsel.

Shortly after appellant's arrest on February 25, 1967, he was brought before a magistrate who properly warned him. Two days later prior to his interrogation and subsequent confession he was again warned by Police Officer Thomas D. McMillion. These warnings appear to be in full compliance with the provisions of Articles 15.17 and 38.22, V.A.C.C.P., in effect at the time of the arrest and trial, as well as the decision in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. We do not understand appellant to contend otherwise. After appellant was warned by the magistrate as to his right to retained or appointed counsel, he declined an attorney and stated to the magistrate "he didn't need one." Nevertheless, he contends that subsequent thereto and prior to the confession he informed Officer McMillion, who had permitted him to make a number of telephone calls, that he was attempting, through his girlfriend, to secure a lawyer. The fact that he had informed McMillion was established by cross-examination of the officer as appellant did not testify or offer any evidence at the separate hearing on the admissibility of the confession conducted in the absence of the jury. McMillion testified he interpreted the effort as one to secure a bond. It is not clear from the record just when McMillion was so informed, though it was not the day the confession was taken (February 27).

It does not clearly appear that appellant was being interrogated at the time he informed McMillion of his effort to secure a lawyer, nor did he state that he did not

2. Burleson's testimony resulted in his perjury conviction. See Burleson v. State, Tex.Cr.App., 429 S.W.2d 479 (May 29, 1968), reversed as a result of a defective indictment.

desire to talk further or have counsel present before further interrogation. Be that as it may, there is no showing that any interrogation designed to elicit incriminating statements followed appellant's announcement.

The record does not reveal who initiated the conversation on February 27, at approximately 10:30 a. m., but it does show that appellant told Officer McMillion "Man, you all really got me on it anyhow, I might at well just tell you all about it and get this stuff all straightened up." The statement appears to be entirely unsolicited.

Thereafter he was orally given the *Miranda* warnings and he then orally waived his right to counsel. Prior to signing the statement it was read to him by McMillion, then the appellant read the statement, and signed it at 11:12 a. m. in the presence of a non-police witness.

The confession reads as follows:

"VOLUNTARY STATEMENT

"DATE 27 February, 1967. TIME 11:00 A.M. PLACE Room 313, 106 S. Harwood, Dallas, Texas. I, Jackie Carver Hill, am 23 years old and I live at 3723 Nomas. On the 25th day of February, 1967, at 11:10 A.M. I was taken before H. C. Dimon, a magistrate, at Corporation Court #5, City of Dallas, Texas, who informed me that I was accused of the crime of Theft Over $50.00 (Auto), and of the affidavit, if any, filed in support of such accusation, and of my right to an examining trial. I was further told by this magistrate of my right to obtain a lawyer, and of my right to request the appointment of a lawyer if I were unable to hire one. The same magistrate also told me that I was not required to make any state-

ment, and that any statement I make may be used against me.

"The person to whom I give this statement, Detective Thomas D. McMillion, who has identified himself as City Detective, Dallas Police Department, Dallas, Texas, also warned me that I did not have to make any statement at all and that any statement I make could be used against me on the trial or trials for the offense or offenses concerning which this statement is herein made, and of my right to the advice of a lawyer before making any statement.

"Nobody has mistreated, threatened or forced me in any way to make this statement, and nobody gave me anything or promised me anything to make this statement. I do not want to talk to a lawyer before making this statement, and I wish to make the following true facts known of my own free will. This past Friday night about 8:30 PM, I got a 1964 Chrysler from the Parking Lot on Federal Street near Sanger Harris. This car was light blue and it was a 4 door. I was by myself and I drove the car to West Dallas. I still had the car on Saturday morning and was at a Gulf Filling Station on N. Westmoreland when the Police came inside and got me. I had the keys to this car in my pocket and I put them in back seat of the Squad car. I think the officers name was J. Raz that I put the keys to the Chrysler in his car.

"I have read the 1 page of this statement, each page of which bears my signature, and the facts contained there in are true and correct.

"This statement was finished at 11:12 A.M. on the 27th day of February, 1967.

"WITNESS: /s/ Janet Hoffman

"WITNESS: _____

/s/ Jackie Carver Hill
Signature of person giving voluntary statement."

There is no evidence in the record to indicate that the appellant was threatened, tricked or cajoled into a waiver. It appears that prior to the interrogation on February 27 the 23-year-old appellant, who had been twice previously convicted of felonies, was aware that he was free to exercise his rights and privilege against self incrimination at that point in time and waived such rights orally and in writing. There is no showing of lengthy interrogation or incommunicado incarceration which would mitigate against the finding of a valid waiver.[3]

It appears to be the appellant's contention that despite the proper warnings and waiver or other circumstances the police officers were forever barred from future interrogation after appellant's statement that he was attempting to acquire an attorney. We do not agree.

*Miranda,* of course, teaches that even though an accused has been warned and has waived his rights, he may terminate the custodial interrogation at any point and reassert his privilege against self incrimination and his right to counsel.

The Court in *Miranda* said:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

We do not interpret that portion of *Miranda* to mean that under no circumstances can there ever be any further interrogation, particularly where the prosecution has sustained its heavy burden of demonstrating that the accused knowingly and intelligently waived his privilege against self incrimination and his right to retained and appointed counsel. Only recently this Court in Gunter v. State, 421 S.W.2d 657, held admissible, under the circumstances there presented, a confession taken in absence of and without notification of accused's court appointed counsel, in view of the clear cut affirmative waiver. See also Childs v. State, 243 Ark. 62, 418 S.W.2d 793. Cf., however, Davis v. State, 243 Ark. 157, 419 S.W.2d 125.

In analyzing that portion of *Miranda* opinion, quoted above, the Supreme Court of North Carolina in State v. Bishop, 272 N.C. 283, 158 S.E.2d 511, said:

"We do not interpret the portion of the *Miranda* opinion now under consideration to mean that when a defendant is 'in custody' and has been duly advised of his constitutional rights, and he states that he does not want to make a statement at the first questioning, that law enforcement officers are forever barred from asking another question. We do interpret it to mean that when a defendant is being interrogated and he indicates that he wishes to remain silent, that interrogation must not then be continued. The vice sought to be removed is the evil of continued, incessant harassment by interrogation

**3.** In Miranda, the Court said: "[a]n express statement that the individual is willing to make a statement

and does not want an attorney followed closely by a statement could constitute a waiver * * *."

which results in breaking the will of the suspect, thereby making his statement involuntary."

In *Bishop* the defendant had been advised of his rights under *Miranda* and he indicated to the police that he did not wish to talk, and the police ceased all efforts for that day to interrogate him but resumed their interrogation the next day, preceded by the warnings and the taking of a waiver. There it was held that the second interrogation attempt was not precluded by the refusal to talk at the first such attempt, where the defendant was not pressured into changing his mind concerning his refusal to talk and he, in fact, had a sufficient amount of time to change his mind after his first refusal.

In State v. Godfrey, 182 Neb. 451, 155 N.W.2d 438, the Supreme Court of Nebraska rejected a contention that once a defendant had indicated his desire to be left alone by the police rather than interrogated he thereby invokes his constitutional right not only to remain silent, but to have counsel, and that any subsequent statement made without the presence of an attorney is prohibited. The Court held that the fact that a defendant, as a part of the initial procedures at a police station, after full *Miranda* warnings, is asked whether he desires to make a statement at that time and answers negatively, does not automatically invoke his right to counsel and render inadmissible any subsequent statement obtained in the absence of counsel. Neither does such a factual circumstance prohibit or invalidate a later waiver voluntarily, knowingly and intelligently made.

The Nebraska Court in *Godfrey* said:

"We recognize that the police cannot be permitted to attempt an in-custody interrogation and, upon being met with a refusal, return a prisoner to his cell and then attempt to repeat the procedure periodically until a statement is obtained. However, an otherwise valid voluntary waiver of both the right to counsel and the right to remain silent, knowingly and intelligently made, followed by a statement, should not be transformed into invalidity merely because of silence at some prior time. One refusal to make a statement, when that refusal is fully honored, ought not to taint the substance of the entire subsequent procedures under the circumstances here."

We, therefore, overrule appellant's ground of error #3.

 In a supplemental brief appellant seeks to raise additional grounds of error under the provisions of Article 40.09, Sec. 13, V.A.C.C.P. He contends the trial court failed to include in its findings of fact after the separate hearing on the admissibility of appellant's confession any express finding as to appellant's "waiver" of his rights or the burden of proof utilized. We agree that since *Miranda* an express finding of waiver is highly desirable in the judge's findings of facts and conclusions of law where he finds the same to exist, but in the case at bar the judge expressly found that all the requirements of the *Miranda* decision had been met, and this we conclude, is sufficient to meet appellant's contention as to "waiver."

 The burden of proof to be sustained at such hearing by the State has not been delineated by any Supreme Court opinion and the question has not previously been presented to this Court. Mr. Justice Black showed concern for this problem while dissenting in Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, by pointing out that the majority had failed to state the burden of proof required under the new constitutional rule announced. Whether the judge must be convinced beyond a reasonable doubt, by clear and convincing proof, or by a preponderance of the evidence is a serious problem. Nothing in *Miranda* or any of the holdings of the United States Supreme Court since Jackson v. Denno, supra, requires that the trial judge's findings of admissibility be formally based upon proof beyond a reasonable doubt. There pres-

ently exists a split of authority on this question, with the majority favoring the requirement of "beyond a reasonable doubt." See discussion of various authorities in State v. Yough, 49 N.J. 587, 231 A.2d 598.

In the case at bar there can be no question but what the trial judge made a reliable and clear cut determination of the voluntariness and admissibility of the appellant's confession based upon the undisputed testimony of the one witness Officer McMillion, though in his findings he did not expressly state that the burden of proof utilized was "beyond a reasonable doubt." The appellant did not object to such findings or seek clarification thereof, and did not subsequently request that the issue be submitted to the jury where the proof unquestionably would have been "beyond a reasonable doubt." See Article 38.22, V.A.C.C.P. The ground of error was not raised in appellant's trial brief (Article 40.09, Sec. 9, V.A.C.C.P.), and since we do not deem it to be one requiring review "in the interest of justice" (Article 40.09, Sec. 13, V.A.C.C.P.), we prefer to reserve judgment on this question until the question has been properly presented and briefed.

It is interesting to observe that in State v. Yough, supra, the New Jersey Supreme Court did not view the matter as one of constitutional dimension and did not believe that the reasonable doubt standard applied to the preliminary inquiry and finding on admissibility by the trial judge. Nevertheless, the Court concluded that "the sound administration of justice would perhaps be better served," and the safer course would be, particularly in light of the trend of Supreme Court decisions, for all New Jersey trial judges to use the reasonable doubt standard in all future hearings on voluntariness and admissibility and to expressly say so in their findings. The Court said:

"This would avoid uncertainty and confusion and the danger of later un-

settlement. As a practical matter, it would make little difference, for as was pointed out in the concurring opinion in Clifton v. United States, supra, '[t]here is only a relatively narrow zone of cases in which a judge in a criminal matter will be "satisfied" of the voluntariness though he harbors a reasonable doubt.' 371 F.2d at p. 364."

Further, only recently in Pea v. United States, 397 F.2d 627, 3 Cr.L. 2243, the Circuit Court of Appeals for the District of Columbia sitting en banc, reversed its earlier panel decision in Clifton v. United States, 125 U.S.App.D.C. 257, 371 F.2d 354, cert. denied, 386 U.S. 995, 87 S.Ct. 1312, 18 L.Ed.2d 341, and held in exercise of their federal supervisory power that a judicial determination in the District of Columbia that a confession is admissible cannot be made unless the judge is satisfied beyond a reasonable doubt that the confession was voluntary. Cf., however, Commonwealth ex rel. Butler v. Rundle, 429 Pa. 141, 239 A.2d 426.

Finding no reversible error, the judgment is affirmed.