David RYAN *v.* STATE of Arkansas

CR 76-48                          538 S.W. 2d 702

Opinion delivered July 19, 1976

*Shaver, Shaver & Smith,* by: *Tom B. Smith,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *B.J. McCoy,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Appellant, David Ryan, was convicted by a jury of possession of a controlled substance (marijuana) with intent to deliver in violation of Ark. Stat. Ann. § 82-2601 et seq. (Supp. 1975), and sentenced to four years confinement in the Department of Correction, with a fine of $7,500.00. From the judgment so entered, Ryan appeals, arguing several points for reversal.

Proof on the part of the state reflects that a Cross County deputy sheriff, Jerry Dallas, was driving past a trailer park in Wynne, about 5:00 P.M. on March 12, 1975, when he saw appellant and several other persons standing in a group in the park. Dallas was familiar with appellant and some of the others in the group, and stated that he had knowledge that some of the people observed had dealt in drugs. The deputy noticed that appellant had a brown paper sack in his hands. When Dallas stopped his car to investigate, appellant "took off running" with the sack. About three or four minutes later, though, while the deputy was questioning the other members of the group, a resident of the trailer park, Melvin Swink, came up and told Dallas that he had surprised a young man, whom he later identified as appellant, placing something in his (Swink's) boat. Swink had asked the man what he was doing and the man replied, "I'm hiding something," but then said, "I'll get it," and pulled a brown paper sack from the boat. Swink told Dallas that the man walked around a nearby trailer, toward a large drainage ditch behind the trailer, carrying the sack. When the man reappeared from behind the trailer, a moment later, he was no longer carrying the sack. Another resident of the trailer park, Ray Dean Davis, also had observed appellant.

Deputy Dallas and the two citizens, Swink and Davis, began searching the drainage ditch, which belonged to the city, for the sack. Dallas soon received a report that appellant had been sighted nearby, and he left to look for appellant, requesting Swink and Davis to continue searching in the ditch for the bag. Shortly thereafter, Swink found a brown paper sack in the ditch, near a culvert; the sack contained 15 plastic "baggies" of green vegetable matter. Swink and Davis kept the sack for a few minutes, until Dallas returned, and gave it to him. By that time Dallas, who had not found appellant, had radioed for assistance and had requested a state policeman, Fred Odom, to "stake out" the trailer park in case appellant returned. Dallas then took Swink and Davis, together with the sack, to the sheriff's office for questioning.

Odom apprehended appellant, who had returned to retrieve his automobile, and the officer then took appellant to the sheriff's office; no interrogation of any sort occurred before Odom surrendered custody of appellant to Deputy Dallas. At that point, Dallas orally advised appellant of his rights, reading them from a written statement and explaining them. Dallas said that he asked appellant if he understood the rights, and appellant answered in the affirmative. Officer Odom, who had brought appellant to the office, was present and fully corroborated the testimony of Dallas. Both men stated that no threats or inducements of any type were made to appellant and Ryan at no time requested a lawyer or asked for the questioning to cease.

According to Dallas, appellant said that he had had possession of the marijuana for only a few hours, and had brought it to the trailer park to "stash" it in a friend's trailer. Appellant admitted that the sack was his and that "he was the only one who had anything to do with it." According to the officer, Ryan related that he ran when someone in the group told him that "a police car had hit his brake lights and he just simply got scared standing there with this in his hand and he ran . . . he said that he went around to this boat in the trailer park and was going to hide it, this sack, hide this sack in a boat . . . said this man confronted him and he [appellant] told him he would get the package . . . he got the package back out of the boat and went on through the trailer

park and threw it in the ditch and then he said that he went on home . . . when he was [later] coming into the trailer court to try to get his car he was arrested there."

Officer Odom likewise testified that appellant admitted that the sack was his, and contained 15 bags of marijuana.

Appellant attacks two links in the chain of evidence. First, he argues that the state failed to connect the brown sack found in the ditch with appellant, "and this brown sack could be anyone's sack"; second, that one of the "baggies" containing marijuana was not labeled as having been taken from Ryan when it was sent to the state laboratory for analysis, and was improperly identified on trial; *i.e.*, the integrity of the chain of evidence was not maintained.

A review of the evidence presented by the state shows that these arguments have no merit. Swink testified that he saw appellant walk behind a trailer, which was only seven or eight feet from the drainage ditch, with the sack in his hands, and re-emerge a few moments later without the sack. Swink reported this to Deputy Dallas, and immediately returned to the ditch and began searching for the sack, which he subsequently found. Moreover, the small possibility that anyone else might have placed the sack in the ditch was completely removed by the admission of appellant himself, to Deputy Dallas, "what he did was went (sic) near a culvert and threw it in the ditch." Neither at the pretrial hearing nor the trial did any witness ever challenge the veracity or accuracy of the officer's testimony about this statement.

Further, the admitted mislabeling of one of the "baggies" taken from the sack did not prejudice appellant. Again, the facts are undisputed. After Deputy Dallas received the sack from Swink, he locked it in the evidence room at the sheriff's office, where it remained until the trial. However, another deputy, Hank Williams, was authorized to remove three of the "baggies" from the sack so that they could be sent to the state drug laboratory as samples for identification. Williams drew three "baggies" at random from the sack, and labeled two of them, respectively, "E-1, suspect David Ryan," and "E-2, suspect David Ryan." The mislabeling occurred when Williams marked the third bag, "E-3, suspect

Keith Coffey."

The mistake on the third tag was not discovered until after the jury had retired, when the court reporter noticed the incorrect name. The trial court disclosed this information in open court to counsel, and the prosecuting attorney explained that appellant and Keith Coffey had been arrested a few days apart for drug offenses, and that samples taken from both had been sent to the state laboratory at the same time. Counsel agreed to investigate the matter to find whether the samples had been confused.

The trial court subsequently conducted another hearing on the mislabeling, when Deputy Williams returned to testify. Williams stated that he had simply made a mistake in writing the name on the label, and no possibility existed that he might have confused the samples. Williams reaffirmed his previous testimony that all three bags came from appellant's sack, and stated, "[s]ome way I marked Coffey on Ryan's bag." After Williams testified the trial court denied appellant's motion for a mistrial, commenting that "[i]t is rather evident and obvious and the Court so finds that the defendant, David Ryan, was not in any way prejudiced by the confusion or mix-up due to the erroneous labeling of the drug sample. There has been no showing of any possible prejudice, which could have resulted against the defendant, David Ryan."

This court summarized the law applicable to this point in *Wickliffe and Scott* v. *State*, 258 Ark. 544, 527 S.W. 2d 640:

"In *West* v. *United States*, 359 F. 2d 50, 55 (8th Cir. 1966), cert. den. 385 U.S. 867 (1966), the court said:

Appellant seems to be arguing that as long as it is conceivable that the evidence could have been tampered with, it should not have been admitted. This, however, is not the law. The government need not exclude all possibilities of tampering. The Court need only be satisfied that in reasonable probability the article had not been changed in important respects.

Further, the court held that the [trial] court is accorded some discretion in determining the admissibility of evidence.

"In *Fight* v. *State*, 254 Ark. 927, 497 S.W. 2d 262 (1973), we said, '[T]he purpose of the chain of identification is to prevent the introduction of evidence which is not authentic.' To the same effect are *Witham* v. *State*, 258 Ark. 348, 524 S.W. 2d 244 (1975); and *Freeman* v. *State*, 238 Ark. 804, 385 S.W. 2d 156 (1964)."

In the instant case there is no question that the trial court did not abuse its discretion in refusing to declare a mistrial simply because one of the three samples was mislabeled. See *Perez* v. *State*, 249 Ark. 1111, 463 S.W. 2d 394.

Let it be remembered that at no point in the prosecution of this case, neither in the pretrial hearing nor the trial itself, was there any contradiction of the officers' testimony that Ryan had admitted to them that the sack contained marijuana that he had procured, that belonged to him, and that he planned to "stash" somewhere. Nor does appellant, even on appeal, challenge the validity of the two other tested samples of marijuana. Thus, even if error were committed in admitting the mislabeled sample, no prejudice resulted because of appellant's own admissions and the other evidence in the case. See *United States* v. *King,* 485 F. 2d 353 (10th Cir. 1973); *United States* v. *Spinks,* 470 F. 2d 64 (7th Cir. 1972), *cert. denied*, 409 U.S. 1011; *United States* v. *Deaton,* 468 F. 2d 541 (5th Cir. 1972), *cert. denied,* 93 S. Ct. 1386; *Beatty* v. *United States,* 357 F. 2d 19 (10th Cir. 1966); *Caldwell* v. *United States,* 338 F. 2d 385 (8th Cir. 1964), *cert. denied,* 380 U.S. 984.

It is asserted that the trial court erred in admitting the sack, its contents, and appellant's admissions to the officers into evidence. This contention has already been found to be without merit and no further comment is necessary.

It is contended that the information filed was insufficient because it was not filed under oath by the prosecutor, and further, because it did not specify to whom appellant intended to deliver the marijuana. We have held that neither the Constitution nor the statutes require that the information be

under oath. *Bazzell* v. *State,* 222 Ark. 473, 261 S.W. 2d 541. Of course, as to the second phase of the argument, the intent to deliver element is a legal presumption embodied in Ark. Stat. Ann. § 82-2617 (d) (Supp. 1975). For that matter, one who possesses marijuana for sale probably does not know himself to whom it might be sold.

Appellant offered an instruction that "equality before the law is recognized for all persons, and such equality shall not be denied." The trial court refused the instruction. Of course, the instruction was entirely abstract, there being no contention that Ryan was being denied equal protection of the law, *i.e.,* some other defendant received a lesser penalty, or no penalty at all, for the same offense. Not only that, but a review of the instructions given by the trial court reflects that they fully and fairly stated the law applicable to the case.

Finally, it is alleged that the punishment imposed was unconstitutionally cruel and unusual. We have held numerous times that if a sentence comes within the limits imposed by statute, it is not "cruel and unusual." *Randle and Wright* v. *State,* 245 Ark. 653, 434 S.W. 2d 294; *Stout* v. *State,* 249 Ark. 25, 458 S.W. 2d 42. The sentence given falls within the provisions of the statute; in fact, the imprisonment part of the sentence was not much more than the minimum, and the fine imposed was only half that authorized under the law.

Affirmed.