**Opinion issued December 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00911-CR

_____

**JEREMY HOWARD, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 209th District Court**
**Harris County, Texas**
**Trial Court Case No. 1392158**

---

# O P I N I O N

A jury convicted appellant, Jeremy Howard, of the first-degree felony offense of aggravated robbery and assessed his punishment at thirty years'

confinement.[1]  In four issues, appellant argues that the trial court erroneously denied his motion to suppress three recorded statements because the recordings did not contain a knowing, intelligent, and voluntary waiver of his statutory rights and that the trial court erroneously overruled his objection to testimony concerning his post-arrest, post-*Miranda* invocation of his right to remain silent and right to counsel.

We affirm.

## Background

### A. Factual Background

On June 8, 2013, Judy Gorman stopped by a Tobacco Mart store in northwest Houston around 8:00 or 8:30 in the morning.  Gorman pulled up to the drive-thru window and rang the bell, but no employee answered or came to the window.  Gorman then banged on the window and honked her car horn. While she honked her horn, she heard a "pop pop" sound "like a car backfiring."  Gorman believed that the noise might have been coming from her car, so she checked underneath it but did not see anything out of the ordinary.  When she stood back up, she saw the cashier of the Tobacco Mart standing at the drive-thru window, "and he was holding himself and blood was everywhere."  Gorman called 9-1-1. After speaking with the 9-1-1 dispatcher, she saw a truck swerve out from the

---

[1]     *See* TEX. PENAL CODE ANN. § 29.03 (Vernon 2011).

Tobacco Mart parking lot, and she followed the truck to report its license plate number to the dispatcher. Gorman followed the truck for a little while, but the truck was driving recklessly, and the dispatcher told her to return to the Tobacco Mart and wait for the police. Gorman could not see the faces of anyone inside the truck.

Alkarim Virani, the complainant, worked as a manager at the Tobacco Mart. Around 8:45 in the morning on June 8, 2013, two black men entered the Tobacco Mart and requested a pack of cigarettes. When Virani turned to put the cigarettes on the counter, one of the men removed a gun from his pocket and shot Virani in the stomach. Both of the men then jumped over Virani and started putting cigarette packs in a trash bag. The shooter asked Virani where money was located in the store, and Virani showed him to the office. After the shooter left the office, Virani tried to shut the door, but the shooter shot through the door and hit Virani in the finger. After the shooter and the other man left the Tobacco Mart, Virani pushed a panic button and spoke with a customer who called the police. Virani saw the faces of both men during the robbery, but he was unable to identify any suspects in a photo-array, and he did not identify appellant in court as being involved in the robbery. The trial court admitted a copy of the surveillance video from the inside of the Tobacco Mart, which depicted the robbery, during Virani's testimony.

Houston Police Department ("HPD") Officer A. Larkin responded to the panic call. When he walked toward the Tobacco Mart, he saw a stack of cash sitting on the wheelchair ramp. Inside, Officer Larkin found Virani and called for an ambulance. Officer Larkin discovered spent shell casings and a bullet inside the Tobacco Mart, and he also found surveillance cameras that looked as though they had been ripped from the ceiling.

## B. Hearing on Motion to Suppress Oral Statements

The trial court held a pre-trial hearing on appellant's motion to suppress four custodial statements.[2]

Officer M. Houston and his partner Sergeant Mora, with the HPD robbery division, conducted an interview with appellant on June 9, 2013. Officer Houston began the interview by reading appellant each of his statutory rights. Appellant nodded his head after Officer Houston read each right, which Houston interpreted as appellant indicating that he understood each right. Appellant appeared to understand what Officer Houston was reading, and appellant had no questions about any of his rights. After Officer Houston finished reading appellant his rights, appellant began answering Houston's questions. Appellant seemed relaxed

---

[2] Appellant ultimately withdrew consideration of the first statement, an unrecorded statement made to Officer L. Magness on June 8, 2013, from the motion to suppress, but he then objected to admission of the statement on hearsay grounds. The trial court sustained the objection, and this statement was not admitted into evidence.

throughout the interview, and Officer Houston did not threaten or coerce appellant into giving a statement, and he never promised appellant anything in exchange for a statement. Officer Houston testified that appellant was coherent throughout the interview, that he did not appear to be under the influence of drugs or alcohol, and that he appeared eager to "share his side of things." Appellant did not invoke his right to remain silent or his right to counsel during this interview. This interview lasted approximately ten minutes.

Officer J. Curtis, also with the robbery division, interviewed appellant on two occasions—June 13, 2013, and June 21, 2013. Officer Curtis testified that before he spoke with appellant about the offense on June 13, he read appellant his statutory and constitutional rights. After reading each of the rights, Officer Curtis asked appellant if he understood and waited for appellant to respond before moving on to the next one. Officer Curtis stated that appellant "affirmatively" responded that he understood each of his rights. Appellant did not ask any questions about his rights, and Officer Curtis did not feel as though appellant did not understand his rights. Once Officer Curtis had read appellant his rights and appellant had stated that he understood each one, Curtis began questioning appellant, and appellant answered Curtis's questions. Appellant never stopped the interview or asked for an attorney. Appellant did not indicate that he did not want to speak to Officer Curtis or that he wanted to invoke his statutory rights, and

5

Curtis believed that appellant voluntarily provided information to him during this interview. Officer Curtis testified that he never threatened or coerced appellant into giving a statement, that he never promised appellant anything in exchange for a statement, and that appellant did not appear incoherent or under the influence of anything during the interview. Officer Curtis characterized appellant's demeanor as relaxed, "very matter of fact," and not "troubled by anything" at the time of the interview. This interview lasted approximately 15 minutes.

Officer Curtis spoke with appellant again on June 21, 2013, after he had been charged with aggravated robbery in the Tobacco Mart case. Officer Curtis again read appellant his statutory warnings and ensured that appellant affirmatively responded that he understood each one before Curtis read the next warning. Officer Curtis testified that he did not coerce appellant into giving a statement, and he did not promise appellant anything in exchange for a statement. Appellant had a "relaxed matter of fact demeanor" during this interview. In this interview, after approximately eighteen minutes of questioning, appellant stated that he did not want to make any further statements without an attorney present. Officer Curtis then terminated the interview.

On cross-examination, both Officer Houston and Officer Curtis agreed with defense counsel that they did not expressly ask appellant if he wished to waive his statutory rights before they began questioning him.

6

After hearing argument from the parties, the trial court denied appellant's motion to suppress the June 9, June 13, and June 21 statements.

## C. Trial

At trial, Officer Houston testified that he and Sergeant Mora conducted an interview with appellant on June 9, 2013. Officer Houston identified appellant in court as the person he interviewed. Officer Houston testified that he began the interview by reading appellant his *Miranda* warnings. After he read each warning to appellant, he asked if appellant understood, and appellant indicated his understanding of each of the warnings by nodding his head. Appellant appeared coherent and not under the influence of any substances during the interview, he had no problems communicating, he appeared relaxed, and he did not ask Officer Houston any questions about his rights. After reading appellant his rights, Officer Houston testified that he told appellant, "There is one side to the story that I have, I don't know your side." Appellant then gave a statement during this interview, and he did not ask to stop the interview. Officer Houston did not threaten or coerce appellant during the interview, and he did not make any promises to appellant in exchange for a statement. Officer Houston testified that appellant indicated that he wanted to give a statement because he "started telling a story and he never stopped talking to us the entire time and he never once asked for an attorney."

The trial court admitted a video recording of the June 9, 2013 interview. Appellant had not been charged in this case at the time he spoke with Officer Houston and Sergeant Mora. During the interview, appellant stated that a family friend told him that he had been involved in the Tobacco Mart robbery. He told the officers that the robbers took cigarettes and approximately $10,000 from the Tobacco Mart and that the robbers shot the cashier in the stomach with a 9 mm handgun. Appellant displayed no hesitation in answering questions, he corrected the officers when they stated details incorrectly, he provided lengthy answers to questions, and he gave the officers names and descriptions of the people he said were involved in the robbery.

Officer Curtis testified that he visited the Tobacco Mart after the robbery occurred on June 8, 2013. There were no suspects at the time he visited the scene. Officer Curtis later spoke with Officer Houston, who told him about his interview on June 9 with appellant. Curtis did not consider appellant to be a suspect in the robbery at that time. After speaking with Officer Houston, Officer Curtis received a Crime Stoppers tip and viewed still photographs from the surveillance video of the Tobacco Mart. At that point, he considered appellant a suspect. The trial court admitted these photographs into evidence. Several photographs show appellant holding a gun inside the Tobacco Mart.

Officer Curtis interviewed appellant for the first time on June 13, 2013. Officer Curtis read appellant the statutory warnings and asked appellant if he understood each of the rights. Appellant indicated that he understood each of the rights "[e]ither verbally or with the shake of his head in the affirmative." Appellant then provided a statement about the case. Officer Curtis stated that he did not threaten or coerce appellant, nor did he promise him anything in exchange for a statement. Appellant never asked to stop the interview, and he did not ask to have an attorney present. The trial court admitted an audio recording of this interview. During this interview, appellant did not indicate that he was involved in the robbery of the Tobacco Mart. He instead blamed another man who Officer Curtis later determined was not involved with the robbery. Appellant told Officer Curtis details about the robbery that had not been released to the public.

Several days after this interview, Officer Curtis viewed the surveillance video from the Tobacco Mart. Relative to the still photographs, the video gave "a clearer depiction as to what happened during the incident," and appellant remained a suspect after Officer Curtis watched the video. After speaking with appellant's mother and sister, he still remained a suspect. Officer Curtis filed charges against him and another man.

Officer Curtis interviewed appellant a second time on June 21, 2013, after he had been charged with the underlying offense. Officer Curtis again started the

interview by reading appellant his statutory warnings. Appellant verbally indicated that he understood each right by saying "all right" after each right that Officer Curtis read. The prosecutor and Officer Curtis then had the following exchange:

[The State]: After reading the Defendant's rights, did he agree to give you a statement?

[Officer Curtis]: Yes, ma'am.

[The State]: During the course of that statement, did the Defendant ever ask you to stop?

[Officer Curtis]: Only at the end.

[The State]: Did he ask for an attorney?

[Officer Curtis]: At the end, yes, ma'am, he did.

Defense counsel objected to the testimony concerning appellant's asking to see an attorney as a comment on appellant's post-arrest, post-*Miranda* right to silence. The trial court overruled this objection.[3] The trial court admitted an audio recording of this interview. In this interview, Appellant implicated himself as the man who shot Virani during the robbery.

The jury found appellant guilty of the offense of aggravated robbery and assessed his punishment at thirty years' confinement. This appeal followed.

---

[3] The trial court included the following instruction in the jury charge: "You are instructed that a statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion."

**Motion to Suppress**

In his first three issues, appellant contends that the trial court erred in denying his motion to suppress the interviews with police taken on June 9, 13, and 21 because the recordings of the interviews did not demonstrate that he knowingly, intelligently, and voluntarily waived his statutory rights.

### A. *Standard of Review*

We review the trial court's denial of a motion to suppress evidence for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)). When we review a trial court's denial of a motion to suppress, we give "almost total deference to a trial court's express or implied determination of historical facts" and review de novo the court's application of the law to the facts. *Id.* We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007) (quoting *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). The trial court is the "sole trier of fact and judge of the credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). The trial court may choose to believe or disbelieve any part or all of a witness's testimony. *Green v. State*, 934 S.W.2d 92, 98 (Tex. Crim. App. 1996). We sustain the trial court's ruling only if it is reasonably supported by the record and correct on any theory of

11

law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

## B. Whether Appellant Waived His Statutory Rights

A defendant's statement may be admitted into evidence against him "if it appears that the same was freely and voluntarily made without compulsion or persuasion . . . ." TEX. CODE CRIM. PROC. ANN. art. 38.21 (Vernon 2005). Code of Criminal Procedure article 38.22 "establishes procedural safeguards for securing the privilege against self-incrimination." *Joseph v. State*, 309 S.W.3d 20, 23 (Tex. Crim. App. 2010). This article provides that no oral statement of an accused made as a result of custodial interrogation shall be admissible unless (1) an electronic recording is made, and (2) prior to the statement but during the recording, "the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights." *Id.* at 23–24; *see* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3 (Vernon Supp. 2015). The warnings must inform the accused that:

(1)    he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;

(2)    any statement he makes may be used as evidence against him in court;

(3)    he has the right to have a lawyer present to advise him prior to and during any questioning;

(4)    if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

    (5)     he has the right to terminate the interview at any time[.]

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a); *Joseph*, 309 S.W.3d at 24.  For the statement to be admissible, "prior to the statement but during the recording the accused [must] . . . knowingly, intelligently, and voluntarily waive[] any rights set out in the warning."  TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2).

The State bears the burden of demonstrating that the defendant knowingly, intelligently, and voluntarily waived his statutory and *Miranda* rights.  *See Joseph*, 309 S.W.3d at 24 (citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966), and *Hill v. State*, 429 S.W.2d 481, 486 (Tex. Crim. App. 1968)).  The State must establish waiver by a preponderance of the evidence.  *See id.*  The State does not have to prove that the defendant expressly waived his *Miranda* rights, only that he did so "knowingly, intelligently, and voluntarily."  *Id.* at 24–25; *see also North Carolina v. Butler*, 441 U.S. 369, 373, 99 S. Ct. 1755, 1757 (1979) (stating that "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated").  To be valid,

> the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.  Second, the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.  Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Joseph*, 309 S.W.3d at 25 (quoting *Moran v. Burbine*, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141 (1986)). When determining whether the "totality of the circumstances" demonstrate waiver, courts consider "'all the circumstances surrounding the interrogation,' including the defendant's experience, background, and conduct." *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725, 99 S. Ct. 2560, 2572 (1979)); *see also Leza v. State*, 351 S.W.3d 344, 353 (Tex. Crim. App. 2011) (stating that although "implied waivers are not to be preferred," it is within trial court's discretion "to rely upon an implied waiver whenever the totality of the circumstances, as reflected by the recording of the oral statement, supports it").

An implied waiver of a defendant's rights can be established upon a showing that the defendant (1) was given the proper warnings; (2) understood the warnings and their consequences; and (3) made an uncoerced statement. *See Hernandez v. State*, 387 S.W.3d 881, 885 (Tex. App.—San Antonio 2012, no pet.). "As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." *Id.* (quoting *Berghuis v. Thompkins*, 560 U.S. 370, 385, 130 S. Ct. 2250, 2262 (2010)). "Simply making a statement is often the kind of conduct viewed as indicative of one's intention to waive [his] rights." *Id.* "[A] suspect who has received and understood the *Miranda* warnings, and has not invoked his *Miranda* rights, waives

the right to remain silent by making an uncoerced statement to the police." *Berghuis*, 560 U.S. at 388–89, 130 S. Ct. at 2264.

Here, appellant does not contend that he did not receive his statutory and *Miranda* warnings, nor does he contend that he did not understand his rights. Instead, he argues that the recordings for each of the three statements do not contain a waiver of his rights.

In each of the three recordings, the interrogating officers started the interviews by reading appellant his statutory warnings. In the June 9 interview, with Officer Houston and Sergeant Mora, Officer Houston read appellant each right and asked if appellant understood that right. Appellant nodded after Officer Houston read each right. In the June 13 and June 21 statements with Officer Curtis, appellant affirmatively responded that he understood each of the rights that Curtis read to him. Two minutes into the June 13 statement, Officer Curtis had technical difficulties with his digital recorder and had to switch to a new one. At the beginning of the second part of that interview, Officer Curtis asked appellant if he was still willing to speak with Curtis about the Tobacco Mart robbery. Appellant responded that he was. At the end of this interview, Officer Curtis asked appellant if he could meet with appellant again in the event Curtis had more questions. Appellant responded, "Yes sir, I don't mind."

In both the June 9 and June 13 interviews, the interrogating officers read appellant his rights and then began asking questions. Appellant immediately responded and provided detailed answers to their questions, at times correcting the officers when they stated something that appellant believed was incorrect. *See Joseph*, 309 S.W.3d at 26 ("Immediately after being warned by [the officer] that he had the right to remain silent and that he did not have to make any statement to anyone, Appellant willingly participated in a six-hour interview."); *Hargrove v. State*, 162 S.W.3d 313, 319 (Tex. App.—Fort Worth 2005, pet. ref'd) (noting, in determining that defendant impliedly waived statutory rights, that defendant "then proceeded without hesitation to discuss the present offense, although he denied any involvement during this first interview"); *State v. Oliver*, 29 S.W.3d 190, 193 (Tex. App.—San Antonio 2000, pet. ref'd) (noting that defendant indicated that he understood his rights and "[t]hen, without any hesitation, [the defendant] proceeded to discuss the circumstances surrounding the murder with [the officer]"). In both of these interviews, appellant implicated other individuals in the Tobacco Mart robbery, and he specifically gave the officers names and physical descriptions of the individuals he said were involved. Appellant did not ask to terminate these interviews, and he did not ask for an attorney. *See Joseph*, 309 S.W.3d at 26 (considering whether defendant invoked right to remain silent and right to attorney in determining voluntariness of implied waiver of rights). During

the June 13 interview, Officer Curtis twice asked appellant if he had any other information that he could provide "to help out" the investigation, and appellant provided additional information without hesitation.

In the June 21 interview, which occurred after appellant had been charged with aggravated robbery, appellant indicated that he understood his rights and agreed with Officer Curtis when he stated that appellant had been charged in connection with the Tobacco Mart incident. In contrast to the previous two interviews, appellant did not immediately answer Officer Curtis's questions, instead remaining silent for several minutes. Appellant did, however, eventually answer questions, explaining that his co-defendant was the one who owned the gun used in the robbery, that his co-defendant coerced him at gunpoint to participate in the robbery, that the robbery was his co-defendant's idea, and that both men had a gun. *See Joseph*, 309 S.W.3d at 26 ("Moreover, the fact that Appellant felt free to decline answering particular questions suggests that the information he did choose to provide was given voluntarily."). During the course of the interview, appellant implicated himself as the shooter. The interview lasted for approximately sixteen minutes before appellant informed Officer Curtis that he needed to speak with an attorney to "see if I can work a deal out."[4] *See Oliver*, 29 S.W.3d at 193 ("The

---

[4] In his brief, appellant points out that the defendant in *Joseph* spoke with the police for six hours and never asked that the interview be terminated or requested an attorney, whereas in the June 21 statement, appellant's interview lasted only

17

invocation of [the right to counsel] after questioning had proceeded for some time demonstrates [the defendant] understood his rights when the interview began and waived same when he discussed the case."). Officer Curtis asked if appellant wanted his attorney present, and appellant responded that he did. Officer Curtis did not ask appellant any further questions about the robbery. The portion of the interview in which appellant invoked his right to remain silent and his right to counsel was included in the recording played for the trial court at the suppression hearing but was redacted from the recording admitted into evidence during the trial.

There was no indication in any of the interviews that the officers threatened or coerced appellant into making a statement, or that they made any promises to him in exchange for making a statement. *See Joseph*, 309 S.W.3d at 26 (noting, in determining that defendant impliedly waived his statutory rights, that "there appears to be no possibility that a promise from police could have jeopardized the voluntariness of Appellant's statement."). In the June 9 interview, Sergeant Mora

---

eighteen minutes before he stated that he wanted to speak to an attorney. As the State points out, however, the length of the interview was only one factor that the Court of Criminal Appeals considered in determining that the defendant impliedly waived his statutory rights. *See Joseph v. State*, 309 S.W.3d 20, 26–27 (Tex. Crim. App. 2010) (also considering facts that, after being read his rights, defendant immediately participated in interview, never requested attorney, never asked for interview to be stopped, and "seemed eager to share information with the detectives"; there was no indication of coercion or intimidation; defendant "felt free to decline answering particular questions"; and officers made no promises in exchange for statement).

explicitly stated that the officers were not making appellant any promises, and appellant agreed and continued answering their questions.

The totality of the circumstances demonstrates that appellant was aware of his rights, that he understood his rights, and that he impliedly waived his rights by speaking with Officer Houston and Sergeant Mora on June 9 and with Officer Curtis on June 13 and June 21. *See id.* at 27 (stating, in affirming ruling that defendant impliedly waived his statutory rights, that, immediately after being read his rights, defendant "willingly participated in a six-hour interview with police" and defendant never "ask[ed] that the interview be stopped, nor did he request an attorney"); *Hargrove*, 162 S.W.3d at 319; *Oliver*, 29 S.W.3d at 193; *see also Turner v. State*, 252 S.W.3d 571, 583 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (finding implied waiver of rights when defendant indicated he understood rights "and then proceeded to answer [the officer's] questions"). We therefore hold that the trial court did not err in denying appellant's motion to suppress the June 9, June 13, and June 21 statements.

We overrule appellant's first, second, and third issues.

**Post-*Miranda* Invocation of Right to Counsel**

In his fourth issue, appellant contends that the trial court erroneously overruled his objection to Officer Curtis's testimony commenting on appellant's

post-arrest, post-*Miranda* assertion of his right to counsel during the June 21 statement.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *See Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). As long as the trial court's evidentiary ruling is "within the zone of reasonable disagreement," we may not reverse it. *Rezaie v. State*, 259 S.W.3d 811, 814 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (citing *Green*, 934 S.W.2d at 102). We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Evidence of an accused invoking his right to counsel "may indeed be construed adversely to a defendant and may improperly be considered as an inference of guilt." *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim. App. 1991); *see also Doyle v. Ohio*, 426 U.S. 610, 619, 96 S. Ct. 2240, 2245 (1976) (holding that use of defendant's silence "at the time of arrest and after receiving Miranda warnings" for impeachment purposes violated due process clause of Fourteenth Amendment). "The guaranty of fundamental fairness in the Due Process Clause forbids the government from making the *Miranda* promises and breaking them by using a suspect's exercise of a right as evidence against him." *Griffith v. State*, 55 S.W.3d 598, 605 (Tex. Crim. App. 2001). Thus, if a defendant invokes his right to

remain silent after receiving his post-arrest *Miranda* warnings, the State cannot use that invocation as evidence of guilt at trial. *Friend v. State*, No. 01-14-00884-CR, 2015 WL 5026078, at *5 (Tex. App.—Houston [1st Dist.] Aug. 25, 2015, pet. filed).

Here, at trial, Officer Curtis testified concerning his June 21 interview with appellant. He stated that, at the time of this interview, appellant had been formally charged with aggravated robbery, and he related how he read appellant his *Miranda* warnings, how appellant stated that he understood each right, and how appellant behaved during the interview. Officer Curtis and the State then had the following exchange:

| [The State]: | After reading the Defendant's rights, did he agree to give you a statement? |
|---|---|
| [Officer Curtis]: | Yes, ma'am. |
| [The State]: | During the course of that statement, did the Defendant ever ask you to stop? |
| [Officer Curtis]: | Only at the end. |
| [The State]: | Did he ask for an attorney? |
| [Officer Curtis]: | At the end, yes, ma'am, he did. |

Defense counsel objected to this testimony, arguing that the testimony impermissibly commented on appellant's post-arrest, post-*Miranda* right to silence. The trial court overruled this objection. The trial court admitted a

21

recording of the June 21 statement into evidence, and appellant's invocation of his right to remain silent and his right to counsel was redacted from that exhibit.

Even if the trial court erred in admitting Officer Curtis's testimony concerning appellant's invocation of his right to remain silent and his right to counsel, we hold that the error is harmless. Because this error affects appellant's constitutional rights, we analyze harm in this case under Texas Rule of Appellate Procedure 44.2(a). *See Friend*, 2015 WL 5026078, at *9; *see also Cooper v. State*, 961 S.W.2d 222, 227 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd) (analyzing harm in such cases under predecessor rule to 44.2(a)). Rule 44.2(a) requires reversal in cases involving constitutional error "unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." Tex. R. App. P. 44.2(a); *see Snowden v. State*, 353 S.W.3d 815, 819–20 (Tex. Crim. App. 2011) ("[T]he constitutional harmless-error standard should ultimately serve to vindicate the integrity of the fact-finding process rather than simply looking to the justifiability of the fact-finder's result . . . .").

In this analysis, we focus upon the error itself in the context of the trial as a whole "in order to determine the likelihood that [the error] genuinely corrupted the fact-finding process." *Friend*, 2015 WL 5026078, at *9 (quoting *Snowden*, 353 S.W.3d at 819). Instead of focusing on whether the evidence supported the jury verdict, we focus on whether "the error adversely affected the integrity of the

22

process leading to the conviction." *Id.* (quoting *Langham v. State*, 305 S.W.3d 568, 582 (Tex. Crim. App. 2010)). We focus on whether the error "might possibly have prejudiced the jurors' decision-making," not "on the weight of the other evidence of guilt." *Id.* Although error is not harmless "simply because the reviewing court is confident that the result the jury reached was objectively correct," the presence of "overwhelming evidence of guilt is a factor to be considered." *Id.* (quoting *Snowden*, 353 S.W.3d at 819, and *Motilla v. State*, 78 S.W.3d 352, 357 (Tex. Crim. App. 2002)). Other non-exclusive factors that we may consider include the nature of the error, whether the error was emphasized by the State, the probable implications of the error, and the weight the jury would likely have assigned to the error in the course of its deliberations. *Id.* (citing *Snowden*, 353 S.W.3d at 822); *see also Kalisz v. State*, 32 S.W.3d 718, 723 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd) (considering, in case involving admission of videotape that included defendant's invocation of right to counsel, factors articulated in *Snowden* as well as source of error, probable collateral implications of error, and whether "declaring the error harmless would encourage the State to repeat it with impunity"). We must "first isolate the error and all its effects and then ask whether a rational trier of fact might have reached a different result if the error had not occurred and its effects had not resulted." *Kalisz*, 32 S.W.3d at 724.

Here, the source of the error is the State's questioning of Officer Curtis about the June 21 interview he conducted with appellant, during which Curtis testified that appellant asked to terminate the interview and invoked his right to counsel. The error thus implicates appellant's constitutional rights to remain silent and right to counsel. *See id.* ("[T]he nature of the error is one of constitutional proportion in that it creates an inescapable conclusion that appellant has invoked his right to counsel and to terminate the interview."). The State did not emphasize this error. It did not ask any further questions of Officer Curtis concerning appellant's invocation of his rights; the audio recording of the June 21 interview was redacted to remove appellant's statements concerning his desire to end the interview and speak with an attorney; and, although the State discussed the contents of appellant's three interviews during closing argument, the State did not mention appellant's invocation of his rights.

Appellant argues that the "probable collateral implication" of the error "is that the jury may have adversely or improperly considered evidence of an accused invoking a constitutional right or privilege as an inference of guilt." *See id.* However, as the State points out, appellant admitted his involvement in the offense and implicated himself as the shooter in the same interview in which he also later invoked his right to remain silent and right to counsel. Moreover, the State presented strong evidence of appellant's guilt of the charged offense, including

appellant's confession in the June 21 interview, the surveillance video in the Tobacco Mart that captured the robbery, and appellant's June 9 and June 13 interviews, during which he offered several details about the robbery that had not been released to the public. By contrast, appellant does not identify any conflicting evidence concerning his guilt. Thus, in light of the strong evidence of appellant's guilt, including his admissions that he was involved in the offense, the jury likely did not place great weight on Officer Curtis's testimony that, after confessing to the offense, appellant asked to end the interview and requested counsel. *Cf. Friend*, 2015 WL 5026078, at *12 (stating, in DWI case, that "[i]t is not easy to determine what weight a juror would place on an error such as the one in this case" because "[t]he contested issue at trial was whether Appellant was intoxicated"); *Kalisz*, 32 S.W.3d at 724 ("Because the evidence of [the defendant's guilt] was conflicting, it is difficult to gauge how much weight a juror would probably place on the error even in light of the trial court's instruction [that a portion of the video would be muted.]").

We therefore conclude beyond a reasonable doubt that, to the extent the State offered Officer Curtis's testimony about appellant's invocation of his rights as substantive evidence of guilt and the trial court erroneously overruled appellant's objection to this evidence, any error did not contribute to appellant's conviction. *See* TEX. R. APP. P. 44.2(a).

25

We overrule appellant's fourth issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

Publish. TEX. R. APP. P. 47.2(b).