

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-17-00375-CR

Charles D. **TUTTOILMONDO** Jr.,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 49th Judicial District Court, Zapata County, Texas
Trial Court No. 2246
Honorable Jose A. Lopez, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Karen Angelini, Justice
Luz Elena D. Chapa, Justice
Irene Rios, Justice

Delivered and Filed: December 5, 2018

AFFIRMED

Charles D. Tuttoilmondo Jr. appeals his conviction for possession of marijuana. He argues the trial court erred by denying his pretrial motion to suppress evidence obtained from a warrantless search and seizure of his commercial vehicle and, at trial, by admitting his written confession into evidence. We affirm the trial court's judgment.

## BACKGROUND

In December 2012, Tuttoilmondo was operating a commercial vehicle, specifically a tractor-trailer, on the highway. Tuttoilmondo was stopped by Texas Department of Public Safety

(DPS) Corporal Samuel Montalvo for a commercial vehicle inspection. As Corporal Montalvo was questioning Tuttoilmondo, several other state troopers arrived. During Trooper Montalvo's conversation with Tuttoilmondo, Tuttoilmondo gave consent to search the tractor-trailer, where over 1,500 pounds of packaged marijuana was found.

Tuttoilmondo was arrested and transported to DPS's district office, where he was interviewed by Agent Carol Alfred Frost, III. Because Agent Frost had worked at DPS for approximately three or four weeks at the time of the interview, Agent Frost's supervisor Captain Maria Garza was also present for the interview. According to Agent Frost, he advised Tuttoilmondo of his rights under *Miranda v. Arizona* and Texas Code of Criminal Procedure article 38.22, and Tuttoilmondo wanted to proceed with the interview.

At the beginning of the interview, Agent Frost put a "Bloggie" (a recording device) on the table, but the interview was not recorded. At the end of the interview, Tuttoilmondo completed a Voluntary Statement of Accused form and handwrote a confession at the bottom of the form. The form contained warnings as to Tuttoilmondo's rights, and according to Agent Frost, Tuttoilmondo initialed next to each of the warnings. The form was not otherwise signed.

Tuttoilmondo was thereafter indicted for possession of marijuana (50 lbs. to 2,000 lbs.). Numerous pretrial hearings were held from June 17, 2013, until November 7, 2016. At the June 30, 2014 hearing on Tuttoilmondo's motion to suppress, the trial court addressed Tuttoilmondo's written confession. Agent Frost testified he had read Tuttoilmondo his rights before Tuttoilmondo confessed to transporting marijuana in exchange for $10,000. Agent Frost explained that because the room used for the interview was not equipped for recording interviews, he attempted to record the interview with the Bloggie. According to Agent Frost, the Bloggie did not record the interview. Agent Frost was asked whether he threatened to detain Tuttoilmondo until after Christmas. Agent Frost denied threatening Tuttoilmondo or promising him anything in exchange for his written

confession. Captain Garza testified Agent Frost never threatened Tuttoilmondo or made him any promises during the interview. The trial court ruled any testimony about Tuttoilmondo's oral statements would not be admissible, but denied Tuttoilmondo's motion as to the written confession.

The case proceeded to a three-day jury trial, starting on March 27, 2017. During trial, Tuttoilmondo again objected to the admissibility of his written confession. Agent Frost again testified about the circumstances leading up to Tuttoilmondo's written confession, and the trial court overruled Tuttoilmondo's objection and admitted his written confession. Corporal Montalvo testified about the initial stop and subsequent search of Tuttoilmondo's tractor-trailer. Tuttoilmondo did not object to Corporal Montalvo's testimony on the grounds that the search and seizure were unlawful. The jury thereafter found Tuttoilmondo guilty, sentenced him to eight years in prison, and the trial court pronounced his sentence in open court. Tuttoilmondo timely perfected this appeal.

### SEARCH & SEIZURE

In his first issue, Tuttoilmondo argues the trial court erred by denying his motion to suppress evidence obtained from the search and seizure of the tractor-trailer he was operating. Tuttoilmondo argues the administrative inspection of his tractor-trailer did not satisfy the regulatory exception to the Fourth Amendment's warrant requirement.

Tuttoilmondo argues he preserved error because he filed and urged a written motion to suppress, and the trial court denied the motion. He also argues he raised additional objections at trial, and the objections were overruled. Although the State does not directly address preservation, we may not reverse a judgment of conviction without addressing error preservation. *See* TEX. R. APP. P. 33.1(a); *Obella v. State*, 532 S.W.3d 405, 407 (Tex. Crim. App. 2017).

Tuttoilmondo's motion to suppress states in relevant part, "The statements made by [Tuttoilmondo] were tainted by the illegal and unlawful detention and arrest, in violation of [Tuttoilmondo's] constitutional rights under the Fifth and Fourteenth Amendments to the Constitution of the United States. Article I, Section 9 of the Texas Constitution and Article 38.23 of the Texas Code of Criminal Procedure." At the suppression hearing, Tuttoilmondo sought to suppress only his statements. Agent Frost and Captain Garza testified about the interview, and Corporal Montalvo and the other officers involved with the stop did not testify. Tuttoilmondo did not raise any issue about the stop and subsequent search of his tractor-trailer at the hearing.

Tuttoilmondo states the trial court overruled further objections he made at trial. Tuttoilmondo cites to parts of the record that do not concern the stop and subsequent search of the tractor-trailer. Tuttoilmondo cites Agent Frost's testimony about Tuttoilmondo's statements, and objections regarding his statements. The stop and subsequent search of Tuttoilmondo's tractor-trailer were not mentioned during this part of the trial. When Corporal Montalvo testified about the stop and subsequent search of Tuttoilmondo's tractor-trailer, Tuttoilmondo did not object to the testimony about the commercial-vehicle stop, Tuttoilmondo's consent to search, or the discovery of the marijuana in the tractor-trailer.

To preserve a complaint for appellate review, an appellant must have presented a timely and specific complaint, objection, or motion to the trial court. *Kou v. State*, 536 S.W.3d 535, 542 (Tex. App.—San Antonio 2017, pet. ref'd) (citing TEX. R. APP. P. 33.1(a)). The purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; and (2) to give opposing counsel the opportunity to respond to the complaint. *Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009). The unlawfulness of the stop and subsequent search of the tractor-trailer was not presented to the trial court in the motion to suppress or at the suppression hearing. There was also no

objection to Corporal Montalvo's testimony about the commercial-vehicle stop, Tuttoilmondo's consent to search, and the discovery of the marijuana in the tractor-trailer. We therefore hold Tuttoilmondo failed to preserve this complaint for appellate review. *See* TEX. R. APP. P. 33.1(a); *Kou*, 536 S.W.3d at 542.

### TUTTOILMONDO'S WRITTEN CONFESSION

In his remaining issues, Tuttoilmondo argues the trial court erred by admitting his written confession into evidence. He argues the written confession did not "show on its face" that he knowingly, intelligently, and voluntarily waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966). He further argues his written confession was involuntary because it was elicited based on a false promise of one of the detaining officers.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We review a trial court's conclusions of law de novo. *Id.* at 328. If a trial court's fact findings are supported by the record or are based on the evaluation of witness credibility and demeanor, we should afford them almost total deference. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). "The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony." *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). When the trial judge makes express findings of fact, we view the evidence in a light most favorable to the ruling and determine whether the evidence supports the findings. *Id.*; *see Rodriguez v. State*, 968 S.W.2d 554, 559 n.8 (Tex. App.—Houston [14th Dist.] 1998, no pet.).

### B. Tuttoilmondo's Written Confession

Tuttoilmondo's remaining issues relate to State's Exhibit 9, which the trial court admitted into evidence over Tuttoilmondo's objection. State's Exhibit 9 is a form that Tuttoilmondo

completed after his interview with Agent Frost. The top part of the completed form appears as

follows:



TEXAS DEPARTMENT OF PUBLIC SAFETY
TEXAS RANGER DIVISION

VOLUNTARY STATEMENT OF ACCUSED

THE STATE OF TEXAS

COUNTY OF ___Webb___

My name is _Charles Tuttlemurle_ I am __46__ years of age, my date of birth is _6/7/66_ and I presently reside at _____. The person to whom I am giving this statement has been identified to me as ████████████████████ a peace officer duly commissioned by the State of Texas.

This statement is being given voluntarily, without fear of duress or threat, and without promise of leniency. Prior to this statement being made, I was advised that I am suspected of or charged with the offense of _____.

The redacted line appears to be an address. The parties explained in the trial court that the top part

of the form was incorrectly filled out. The middle and bottom of the form appear as follows:

Further, I was advised of the following **Constitutional Rights**:

1. I have the right to remain silent and not make any statement at all and that any statement I make may be used against me at my trial;

2. Any statement I make may be used as evidence against me in court;

3. I have the right to have a lawyer present to advise me prior to and during any questioning;

4. If I am unable to employ a lawyer, I have the right to have a lawyer appointed to advise me prior to and during any questioning; and

5. I have the right to terminate the interview at any time; and

prior to and during the making of this statement, I knowingly, intelligently, and voluntarily waived the rights set out in the warning above, and having knowingly, intelligently and voluntarily waived those rights, I do hereby make the following free and voluntary statement:

I Charles Tuttlemurle drove from Santa Fe Tx. to phaar Tx. To pick up a load of weed and return it to Houston. for $10,000, I had no. Idea of amount of load or place

- 6 -

Agent Frost testified Tuttoilmondo initialed next to each of the numbers on this form and then wrote the statement at the bottom. The form was not otherwise signed, and there was no signature block on the form.

**B. Knowing, Intelligent, and Voluntary Waiver**

Tuttoilmondo argues his written confession is facially invalid because the form does not show he waived his rights knowingly, intelligently, and voluntarily, and the State otherwise failed to prove he waived his rights knowingly, intelligently, and voluntarily. The State must prove by a preponderance of the evidence that the defendant knowingly, intelligently, and voluntarily waived his statutory and *Miranda* rights. *See Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010). "The State does not have to prove that the defendant expressly waived his *Miranda* rights, only that he did so knowingly, intelligently, and voluntarily." *Howard v. State*, 482 S.W.3d 249, 255 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

For a suspect to make a valid waiver of the Fifth Amendment privilege against self-incrimination, the suspect's waiver must be made knowingly, intelligently, and voluntarily. *Miranda v. Arizona*, 384 U.S. at 444; *see* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2(b). Article 38.22 of the Texas Code of Criminal Procedure provides that a defendant's written statement obtained during custodial interrogation is inadmissible unless the written statement shows "on the face of the statement" that:

> (a) the accused, prior to making the statement, . . . received from the person to whom the statement is made a warning that:
> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
> (2) any statement he makes may be used as evidence against him in court;
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
> (5) he has the right to terminate the interview at any time; and

(b) the accused, prior to and during the making of the statement, knowingly, intelligently, and voluntarily waived the rights set out in the warning prescribed by Subsection (a) of this section.

*See* TEX. CODE CRIM. PROC. ANN. art. 38.22 § 2. In analyzing whether a defendant's waiver of rights was valid, we consider whether: (1) the waiver was voluntary without deception, intimidation, or coercion; and (2) the waiver was made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. *See Joseph*, 309 S.W.3d at 25-27.

Agent Frost testified he read Tuttoilmondo his rights "off the card" he carried in his wallet "prior to" his conversation with Tuttoilmondo "and then [Tuttoilmondo] initialed these at the end of [the conversation] before writing this statement." Agent Frost further testified Tuttoilmondo "agree[d] that he would waive those rights and speak to" him. He also testified he did not coerce or threaten Tuttoilmondo into giving a statement; he did not deny Tuttoilmondo any basic necessities of going to the restroom or drinking water; Tuttoilmondo did not request an attorney or request that the interview cease; and he and Tuttoilmondo spoke in English during the conversation and Tuttoilmondo understood English. The DPS Voluntary Statement of Accused form tracks the language of article 38.22, section 2, and thereby shows on its face that Agent Frost, the person to whom the statement was made, advised Tuttoilmondo of his constitutional rights before making the statement. Agent Frost testified Tuttoilmondo initialed next to each of the five warnings required by article 38.22, section 2, which Agent Frost testified was why he believed Tuttoilmondo understood his rights. The trial court made express findings that Tuttoilmondo was given all required warnings and that his statement was voluntarily given.

The evidence supports that Tuttoilmondo's waiver was voluntary without deception, intimidation, or coercion and that the waiver was made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. *See id.*; *Perez v.*

*State*, No. 04-02-00822-CR, 2003 WL 22491578, at *2 (Tex. App.—San Antonio Nov. 5, 2003, pet. ref'd) (mem. op., not designated for publication). Tuttoilmondo notes he did not sign the written statement, but Agent Frost testified Tuttoilmondo wrote the statement at the bottom of the form, and under article 38.22, a written statement suffices if it is in the accused's handwriting. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 1(1), (2) (providing a written statement may be in the accused's "own handwriting" or "is signed by the accused").

In a separate issue, Tuttoilmondo argues his written statement was made involuntarily because Agent Frost "promised" Tuttoilmondo that his interview would be electronically recorded by a recording device. According to Tuttoilmondo, Agent Frost did not expressly make this promise, but instead impliedly made the promise or lied to him by placing the "recording device on the table directly in front of Tuttoilmondo." In support of this issue, Tuttoilmondo cites to his punishment-phase testimony that Agent Frost told him that if he did not cooperate, he "would be stuck here till after Christmas. [He] wouldn't be home with [his] family."

Initially, the trial court did not admit any testimony about the oral statements Tuttoilmondo made during the interview; the trial court admitted only Tuttoilmondo's written confession. Tuttoilmondo's argument as to how Agent Frost's conduct amounted to an implied promise in exchange for a written confession is difficult to follow, *see* TEX. R. APP. P. 38.1(i) (requiring a clear and concise argument in support of contentions in an appellant's brief), because the evidence supports the trial court's finding that no promises were made in connection with obtaining Tuttoilmondo's written statement. But even if Agent Frost's conduct constituted an implied promise, the implied promise would not render Tuttoilmondo's written confession involuntary unless the written confession was extracted by the improper influence of the implied promise. *See Roberts v. State*, 545 S.W.2d 157, 160-61 (Tex. Crim. App. 1977). Tuttoilmondo has not explained or cited any evidence showing how his written confession was extracted, or the decision to give

the written confession was improperly influenced by Agent Frost's implied promise to record the interview. *See* R. 38.1(i).

Because the trial court's findings turn on witness credibility and demeanor, we must afford them almost total deference. *See Guzman*, 955 S.W.2d at 89. We hold the evidence supports that Tuttoilmondo's written confession was made knowingly, intentionally, and voluntarily. Thus, the trial court did not abuse its discretion by admitting the written confession into evidence at trial.

## CONCLUSION

We affirm the trial court's judgment of conviction.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH