**Opinion issued February 6, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

**NO. 01-22-00398-CR**

————————————

**DENNIS GALLIEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 339th District Court**
**Harris County, Texas**
**Trial Court Case No. 1541083**

---

## MEMORANDUM OPINION

After providing a recorded statement to police, appellant Dennis Gallien was indicted for the offense of aggravated robbery,[1] enhanced by two prior felony convictions. Gallien moved to suppress the recorded statement, but the trial court

---

[1] *See* TEX. PENAL CODE § 29.03.

denied the motion. A jury found Gallien guilty of aggravated robbery but could not agree on a sentence, resulting in a mistrial for the punishment phase. Gallien then filed a motion for mistrial and a motion for new trial for the guilt-innocence phase. The trial court granted a mistrial for that phase as well, and the State appealed. We concluded that the order granting the mistrial for the guilt-innocence phase was functionally indistinguishable from an order granting a motion for new trial. *See State v. Gallien*, 631 S.W.3d 885, 891 (Tex. App.—Houston [1st Dist.] 2021, pet. ref'd). We held that the trial court had erred in granting the guilt-innocence mistrial, reversed the order, and remanded the case for a new punishment hearing. *Id.* at 898. On remand, Gallien entered into a plea agreement regarding punishment and was sentenced to 17 years in prison. The trial court certified Gallien's right to appeal only the "guilt/innocence phase." Gallien now appeals his conviction.

In his sole appellate issue, Gallien challenges the trial court's denial of his motion to suppress his recorded statement. Because we hold that the trial court did not abuse its discretion in denying the motion, we affirm the judgment of conviction.

## Background

On January 19, 2017, S. Shawon was working as a cashier at a Houston gas station. Around 10:00 p.m., a man entered the gas station wielding a knife and demanding that Shawon open the cash register. When Shawon complied, the man grabbed the cash register drawer containing around $700. Shawon jumped over the

2

counter and ran outside. The man fled the gas station with the drawer, and Shawon called the Houston Police Department (HPD).

The following day, the manager of the gas station provided HPD with surveillance video showing the robbery. Using the video, HPD developed Gallien as a suspect and obtained a warrant to arrest him for the offense of aggravated robbery. After he was arrested, Gallien was placed in jail.

The day after his arrest, Gallien was taken from jail to the police station where he was interviewed by HPD Detective W. West. The interview was conducted in an interview room and was video recorded. After introducing himself, Detective West read Gallien his rights as set out in Code of Criminal Procedure article 38.22(a).[2] Detective West asked Gallien, "With those rights being read to you, [are you][3] willing to speak to me about this incident I'm out here to investigate?" Gallien responded, "Yeah." Detective West then stated that the incident was the robbery at the gas station.

During the interview, Detective West showed Gallien a still photograph of the robbery suspect taken from the gas station's surveillance video. Detective West told Gallien that he knew that Gallien was the person in the photograph. Gallien denied

---

[2] *See* TEX. CODE CRIM. PROC. art. 38.22, § 2(a).

[3] It is unclear from the video's audio whether Detective West said "are you" or "you" at this point in the question.

that he was the person in the photo, and he corrected certain statements by Detective West about facts the detective claimed to have learned about him.

Detective West told Gallien that, at the end of the surveillance video, it appeared that, after Shawon jumped over the counter and ran out of view, Gallien had pursued Shawon chasing him with the knife. Detective West told Gallien that he knew that Gallien had not pursued Shawon but had instead fled the scene. Detective West told Gallien that the interview was his opportunity to explain what had happened at the gas station and to show a "human side." Gallien then admitted that he had committed the aggravated robbery. He said that he was on "Kush" at the time of the robbery and had needed money for his drug habit.

After the jury was selected, but before trial began, Gallien orally moved to suppress his recorded statement. The trial court heard the motion outside the jury's presence. At the hearing, Detective West was called to testify and Gallien's video-recorded statement, about 17 minutes in length, was admitted into evidence.[4]

Gallien acknowledged that Detective West had read him his rights before he gave his statement but argued that his statement should be suppressed because he was never asked if he understood or waived his rights. Gallien also asserted that Detective West coerced him into "say[ing] what happened." In response, the State

---

[4] The record reflects that portions of the interview were redacted from the video to remove statements about Gallien's prior convictions and extraneous offenses. During trial, Detective West testified that the interview had lasted 20 to 30 minutes.

4

pointed out that a defendant need not expressly waive his rights when the waiver can be implied from the circumstances. The State asserted that, "from watching the video and [Gallien's] demeanor in the video and his behavior," it "appear[ed] that he clearly understood his rights and waived them by speaking to [Detective West]."

At the end of the hearing, the trial court remarked that it "guess[ed] it's a tactical decision sometimes with police officers talking to people as to whether or not to stop and clearly articulate you're waiving your right, [but] that doesn't preclude a statement from being voluntary and not coerced . . . ." The trial court then found "[no] coercion at all in [Detective West's] conversation with [Gallien] and [in] how [Detective West] approached the subject, how he developed the subject, [and] how he interacted with [Gallien]." The trial court also found that Gallien had been informed of his rights and understood them. And the trial court found that, "from the totality of the circumstances," Gallien had "knowingly and voluntarily waived those rights and engaged in [a] conversation" with Detective West. The court found "that it was truly a voluntary statement in terms of the overall conversation with the officer." The trial court noted that, even when Detective West revealed that he "had the goods on him," Gallien did not ask to speak to an attorney nor did he indicate that he did not want to continue the conversation. The trial court denied the motion to suppress after determining that Gallien had waived his rights "knowingly and intelligently and voluntarily."

**Denial of Motion to Suppress**

In his sole issue, Gallien challenges the denial of his motion to suppress.

**A.    Standard of Review**

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Lerma v. State*, 543 S.W.3d 184, 189–90 (Tex. Crim. App. 2018). We review the trial court's factual findings for an abuse of discretion but review the trial court's application of the law to the facts de novo. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We give deference to the trial court's factual determinations because the trial court is the sole trier of fact and judge of witness credibility and the weight to be given their testimony. *Lerma*, 543 S.W.3d at 190; *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). Our deferential review also applies to the trial court's conclusions regarding mixed questions of law and fact that turn on credibility or demeanor. *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We review de novo mixed questions of law and fact that do not turn on credibility and demeanor, as well as purely legal questions. *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011).

If the trial court makes express factual findings, we view the evidence in the light most favorable to the ruling and determine whether the evidence supports the findings. *Valtierra*, 310 S.W.3d at 447; *see State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (recognizing that findings and conclusions may be "stated

on the record at the hearing"). "The evidence and all reasonable inferences are viewed in the light most favorable to the trial court's ruling, and the trial court's ruling must be upheld if it is reasonably supported by the record and is correct under a theory of law applicable to the case." *State v. Espinosa*, 666 S.W.3d 659, 667 (Tex. Crim. App. 2023).

## B. Applicable Law

Code of Criminal Procedure article 38.21 provides that "[a] statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion." TEX. CODE CRIM. PROC. art. 38.21. An accused's statement made during a custodial interview will not be admissible unless a law enforcement officer advised an accused of his rights before the interview begins. *See* TEX. CODE CRIM. PROC. art. 38.22, §§ 2(a), 3(a)(2); *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Article 38.22 requires that an accused be informed that:

> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and

7

(5) he has the right to terminate the interview at any time.

TEX. CODE CRIM. PROC. art. 38.22, § 2(a); *see Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (recognizing that article 38.22, section 2(a) warnings are "virtually identical" to warnings required by *Miranda*, 384 U.S. at 444, except that article 38.22 also requires warning accused that he "has the right to terminate the interview at any time").

For a custodial statement to be admissible, a defendant must knowingly, intelligently, and voluntarily waive his rights. *See* TEX. CODE CRIM. PROC. art. 38.22, §§ 2(a)–(b), 3(a)(2); *see Miranda*, 384 U.S. at 444. "The burden of proof regarding the waiver rests with the State; it must prove by a preponderance of the evidence a knowing, intelligent, and voluntary waiver." *State v. Lujan*, 634 S.W.3d 862, 865 (Tex. Crim. App. 2021).

To be valid, a waiver of rights must be the product of a free and deliberate choice rather than intimidation, coercion, or deception. *Id.* The waiver must also be made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. *Id.* An accused need not expressly waive his rights. *Joseph v. State*, 309 S.W.3d 20, 24 (Tex. Crim. App. 2010) (recognizing that generally neither express oral nor written waiver is required). Instead, waiver may be inferred from an accused's actions and words. *Id.* An accused's implied waiver of his rights is established on a showing that he (1) was given the proper

8

warnings, (2) understood the warnings and their consequences, and (3) made an uncoerced statement. *Howard v. State*, 482 S.W.3d 249, 256 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd); *see Berghuis v. Thompkins*, 560 U.S. 370, 384 (2010) ("Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent.").

Waiver is judged by the totality of the circumstances. *Joseph*, 309 S.W.3d at 25. "The 'totality-of-the-circumstances approach' requires the consideration of 'all the circumstances surrounding the interrogation,' including the defendant's experience, background, and conduct." *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

**C.    Analysis**

In asserting that his video-recorded statement should be suppressed, Gallien does not dispute that he was informed of his rights. Instead, he argues that his statement should be suppressed because "he did not understand the warnings he was given nor was he ever asked if he waived his right to remain silent."[5]

The video recording of Gallien's statement shows that Detective West read Gallien his article 38.22 rights and asked, "With those rights being read to you, [are

---

[5]    In the trial court, Gallien also asserted that he had been coerced by Detective West to give the statement, but he does not make that claim on appeal.

you] willing to speak to me about this incident I'm out here to investigate?" Gallien responded affirmatively. There is no indication in the record that Gallien did not understand the rights read by Detective West. To the contrary, throughout the 17-minute video, Gallien freely and fluently conversed with Detective West. Gallien appeared not only to understand Detective West's statements and questions but also their implications. And, when he disagreed with Detective West, Gallien explained why Detective West was incorrect. He responded appropriately to Detective West's questions, answering them in detail without a need for clarification or explanation. In short, Gallien appeared to have no difficulty in comprehending what Detective West said to him and showed no difficulty in articulating his thoughts and responses in return. From the video of the interview, the trial court could have reasonably inferred that Gallien understood his rights. *See Galvan-Cerna v. State*, 509 S.W.3d 398, 410 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (rejecting appellant's argument that he did not waive his rights "because he was not explicitly asked if he understood the warnings given to him" where record showed that, during interview, (1) appellant and officer understood one another in Spanish and (2) appellant "convers[ed] freely and answer[ed] questions responsively").

The trial court also could have reasonably inferred that Gallien impliedly waived his rights. After being read his rights, Gallien immediately agreed to speak to Detective West. Gallien proceeded to answer Detective West's questions without

10

hesitation and corrected Detective West when said something with which Gallien disagreed. *See Joseph*, 309 S.W.3d at 26 ("Immediately after being warned by [the officer] that he had the right to remain silent and that he did not have to make any statement to anyone, Appellant willingly participated in a six-hour interview."); *Howard*, 482 S.W.3d at 257 (considering, in determining that defendant impliedly waived statutory rights, that defendant had "immediately responded and provided detailed answers to [officers'] questions, at times correcting the officers when they stated something that appellant believed was incorrect"); *Hargrove v. State*, 162 S.W.3d 313, 319 (Tex. App.—Fort Worth 2005, pet. ref'd) (noting, in concluding that defendant impliedly waived statutory rights, that defendant "then proceeded without hesitation to discuss the present offense, although he denied any involvement during this first interview").

When Detective West indicated to Gallien that it was his opportunity to explain what had occurred at the gas station, Gallien admitted that he had committed the offense. He explained that he committed the robbery because he was on "Kush" and needed money for his drug habit. Gallien did not ask to terminate the interview, and he did not ask for an attorney. *See Joseph*, 309 S.W.3d at 26 (considering whether defendant invoked right to remain silent and right to attorney in determining voluntariness of implied waiver of rights). In addition, Detective West testified that he did not promise Gallien anything in exchange for his statement, and he did not

11

coerce or threaten Gallien. *See id.* (noting, in determining that defendant impliedly waived his statutory rights, that "there appears to be no possibility that a promise from police could have jeopardized the voluntariness of Appellant's statement").

On appeal, Gallien claims that Detective West made a tactical decision not to ask him if he understood and waived his rights. He asserts that "[t]he tactical decision of [Detective West] to skip over the understanding and waiver portion of the 38.22 rights undermines any implied waiver." But, as the State correctly points out, no evidence was offered supporting the assertion. Detective West never indicated that he made a tactical decision to forego asking Gallien if he understood or waived his rights. In fact, Detective West initially testified that he had asked Gallien if he understood his rights, but, after viewing the video of the interview, he acknowledged that he had not asked Gallien that question.

Gallien points to the trial court's remark that it "guess[ed] it's a tactical decision *sometimes with police officers* talking to people as to whether or not to stop and clearly articulate you're waiving your right, [but] that doesn't preclude a statement from being voluntary and not coerced . . . ." (Emphasis added.) Gallien characterizes the trial court's remark as a finding of fact and asserts that "[t]he trial court's recognition that [Detective West] used a tactic to deny Mr. Gallien his constitutional and statutory rights should be enough to suppress the confession."

12

We disagree with Gallien's characterization. The trial court's remark did not address Detective West's conduct specifically; rather, it addressed what police officers in general "sometimes" do. Read in context, the trial court was conveying that, even when an officer does not ask a defendant if he understands and waives his rights, a defendant's waiver may still be valid.

As discussed, a waiver may be inferred from a defendant's actions and words. *Id.* at 25. The defendant need not expressly waive his rights or expressly acknowledge that he understood them; instead, the totality of the circumstances must reflect that he waived his rights with "full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *See id.* (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

Here, the evidence supported a determination by the trial court that the totality of the circumstances demonstrated that Gallien was aware of his rights, that he understood his rights, and that he impliedly waived his rights by speaking with Detective West. *See id.* at 27 (stating, in affirming ruling that defendant impliedly waived his statutory rights, that, immediately after being read his rights, defendant willingly participated in interview with police and defendant never "ask[ed] that the interview be stopped, nor did he request an attorney"); *Howard*, 482 S.W.3d at 258 (holding that totality of circumstances showed that appellant impliedly waived his rights when he immediately spoke with police after receiving rights); *Galvan-Cerna*,

509 S.W.3d at 410 (upholding trial court's denial of motion to suppress custodial statement, even though police officer had not asked appellant if he understood or waived rights, because record showed that appellant freely and fluently conversed with police officer during interview and had not invoked his rights). Accordingly, we hold that the trial court did not abuse its discretion by denying Gallien's motion to suppress his recorded statement.

We overrule Gallien's sole issue.

## Conclusion

We affirm the judgment of the trial court.


Richard Hightower
Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.

Do not publish. Tex. R. App. P. 47.2(b).